Pierce v. Edington, Treasurer.

---

PIERCE v. EDINGTON, TREAS.

1. PRACTICE IN SUPREME COURT: *Original book of accounts brought up with transcript.*

The circuit court has no authority to order an original book of accounts used as evidence on the trial, to be sent up with the transcript of the cause to this court; and if sent here it will form no part of the record, and cannot be noticed by the court, unless incorporated into the bill of exceptions. The proper practice where ponderous books are used as evidence, is to transcribe into the bill of exceptions such portions as were used, or to have some witness testify with the books before him, as to what they show, with any circumstances touching their conditition and appearance material to the case.

2. COUNTY COURT: *Presumption as to regularity of its acts.*

The County court is a superior court of record in the sense that in subject matters within its jurisdiction its action will, in the absence of evidence to the contrary, be presumed to be upon facts sufficient to justify it; and so its appointment of school directors, as required by the act of December, 1875, will, without proof to the contrary, be presumed to be upon the vacancy in office contemplated by the act, though the record of the appointment does not show any such vacancy. Such directors have color of title to the office and their school warrants, drawn for teachers' services, are valid.

3. OFFICER: *De facto.*

What constitutes color of title by election, appointment or commission is not essential as between other parties to constitute one an officer *de facto.* An officer *de facto* is one who exercises an office either by virtue of some appointment or election, or of such acquiescence of the public as will authorize the presumption, at least, of a colorable appointment or election.

APPEAL from *Desha* Circuit Court.

Hon. J. A. WILLIAMS, Circuit Judge.

*P. C. Dooley*, for appellant.

1. Mandamus will lie against a ministerial officer to compel him to perform an act enjoined by law. *Gantl's Dig. sec.* 4150. It was the duty of the county treasurer to pay the warrants out of any funds in his hands for that purpose. *Acts* 1875, *sec.* 68, *p.* 77. The warrants conform to sec. 67 of said act in every particular.

2. Mills, Dixon, and Goza were *at least* directors *de facto*, and as such their acts are binding, because they concern a third person who is assignee for valuable consideration. *Miller* v. *Calloway*, 32 *Ark.*, 666. They were recognized as directors by the school examiner and all the county officials; they were in possession of all the books and records and property of the district, and were universally recognized and their authority undisputed. They held under color of

title, and their acts cannot be enquired into in a case like this.

3.   In public trust the act of a majority is the act of the whole.   *Gantt's Dig.*, sec. 5647 ; *Perry on Trusts*, sec. 413 ; *Dillon on Mun. Corp.*, secs. 217, 218, 221 ; 35 *N. H.*, 477 ; 22 *Barb.*, 137 ; 19 *Vt.*, 37 ; 9 *Pick.*, 146.


*L. A. Pindall*, for appellee.

1.   There was no power in two of the appointed directors to draw the warrants. They could not write.   *Sec. 56 School law*, 1875, *adj'd session*.   When power is conferred upon more than one person and no provision for a majority to act, the acts of less than the whole are invalid.   JUDGE MILLER in *Schenck* v. *Peay & Bliss*, 1  *Walw. Ct. Ct.*, 187–8 ; 3 *Denio*, 253 : *Pulaski County* v. *Lincoln*, 9 *Ark.*, 327 ; *Dillon on Corp.*, sec. 221, *n.* 3 ; *Field on Corp.*, 258, *sec* 23, *&c.*, *&c.* ; *Gredley* v. *Barker*, 1 *B. & P.*, 229.   Goza was not present, had nothing to do with it, was not consulted. The court could not appoint directors except under the circumstances of *sec.* 60, *Act* 1875.

2.   The issuance of the first warrants exhausted the powers of the directors, and the first were barred on their face, and the change in the date, a forgery, destroyed the warrants, debt and all.   See 31 *Ind.*, 9 ; 35 *Barb.*, 414 *et seq.*

3.   The contract was made on Sunday.   *Tucker* v. *West*, 29 *Ark.*, 388.

4.   The school was not taught in the district.

5.   If the right be doubtful, mandamus will be denied. *Ackerman* v. *Desha County*, 27 *Ark.*, 457 ;  6  *Tex.*,  473 ; 2 *Dutcher*, *N. J.*, 135.

6.   *Sec.* 5647 *Gantt's Dig.*, (*sec.* 782 *Code*) has no reference to this question ; it only relates to the pratice of law,

Pierce v. Edington, Treosurer.

and such acts as commissioners to partition lands, assign dower, &c., &c.

7. After the first warrants were drawn and passed out of the directors' hands and been protested, they acquired a new character—they became county warrants. 2 *Vroom*, 208–9–10 ; 17 *Ohio*, 340, 351–2–3 ; 1 *My & Keen*, 165 ; 7 *Eng.*, 165–6 ; 1 *Am. R. R. Cases*, 151 ; 12 *La. An.*, 544 ; 35 *Barb.*, 414 *et seq.* ; 1 *Hill, N. Y.*, 285 ; 20 *John*, 271–2–3 ; 8 *Cowen*, 134 ; 12 *Wend.*, 220.

8. A *quasi* judicial discretion was vested in the treasurer which cannot be controlled by mandamus.    27 *Ark.*, 457 ; 6 *Tex.*, 473 ; 2 *Dutcher, N. J.*, 135.

### STATEMENT.

EAKIN, J. Appellant, who was plaintiff, held three school warrants for $100 each, drawn on the nineteenth of March, 1877, upon the county treasurer by Emanuel Mills and Steven Dixon, as school directors of district No. 6, in Desha County, for the payment of the services of a teacher, which warrants had been assigned to plaintiff. He filed this petition for a mandamus on the same day, alleging that he had presented them to defendant, as treasurer, who had refused either to pay or to protest them as "not paid for want of funds," and that there was then in the treasury to the credit of said district $217, against which there was no prior warrants outstanding. He asked a writ commanding the treasurer to pay the sum in his hands, and to protest for the balance, that he might have a warrant drawn by the county clerk. The warrants are exhibited and appear to be in due form as required by law.

Defendant waived notice and answered :

1st. That said warrants were not properly drawn.

2nd. That the same parties acting as directors, had there-
19–38

tofore, on July 15th, 1876, drawn three other orders or warrants in favor of the same teacher, and endorsed to plaintiff, which had been presented to the treasurer, and which had been, by him, protested for want of funds, and that those warrants were for the same services.

3d. That the drawers were not, in fact, school directors of the said district, because at the annual school meeting thereof, on the third Saturday in August, 1875, John H. McDowell had been duly elected trustee for the ensuing year, and had qualified and acted. That there had been no school meeting since, but the county court, at its April term, 1876, misapprehending the law of December 7th, 1875, and supposing the trustee's office to be vacant, appointed James Goza, together with said Mills and Dixon, as directors, all three of whom accepted. That they have no other authority. That Goza is the only one of the three able to read or write, or qualified for the office, and he had informed respondent that the said warrants were fraudulently drawn.

4th. That the said teacher did not serve out the time for which, under the contract, the pay was given, but abandoned the school; and that the contract under which he taught was made in writing on a Sunday.

5th. That the teacher demanded and received pay from the patrons of the school as for a private school,

He denies that he had money in his hands when the warrants were presented, or that there were no warrants outstanding of prior date, but says he had, in State scrip, $217.99, of which he had subsequently paid $50 on a prior warrant. There is also a demurrer to the petition.

A demurrer to this answer was interposed and overruled. Whereupon petitioner replied, stating that the three former warrants had been withdrawn and cancelled by the directors, for informality, and these issued instead. He denies fraud, or that the treasurer had any legal notice or information,

Pierce v. Edington, Treasurer.

from any one, that they were fraudulently drawn.  He says the services were duly rendered by the teacher; also, that the said Goza, Mills and Dixon were the only lawfully appointed directors in the district, and were recognized as such by all classes in the community; that the action of the two latter as such was matter of public notoriety; and that they had been so recognized by the defendant, who, in other cases, had paid their orders, and by other county officers. He denies that the contract was made with the teacher on Sunday, and says, if it was, that it was afterwards ratified. Denies, also, that McDowell is legal trustee or director; but says that he had himself recognized Goza, Mills and Dixon, by turning over to them the books and papers of the district; and long before the warrants were drawn, had removed from the State; and that no other persons have claimed to act.

The cause was heard upon the issues thus made, and evidence; whereupon the court denied the writ of mandamus, and adjudged the costs against petitioner. He appealed, and brings up the evidence by bill of exceptions. A rule was made on the clerk to send up with the transcript the original warrant book and teacher's record, which appear here with the case.

OPINION.

The books cannot be noticed, as they form no part of the bill of exceptions.  It appears that witnesses testified with reference to them, but they were not made part of the record.  The Circuit Court had no authority to order the originals to be sent here; nor, finding them, can we use them as original evidence.  We can reverse or affirm only on the record.  The proper practice, where ponderous books have been used in evidence, is to transcribe into the bill of exceptions such portions as were used, or to take the

1. PRACTICE IN SUPREME COURT: Original books of accounts no part of record.

testimony of some witness, with the books before him, as to what they show, with any circumstances touching their condition and appearance material to the case. If the practice were indulged of examining original books here, it is easy to conceive of great embarrassment which might arise in complicated banking or mercantile cases.

It appears that in August, 1875, McDowell was elected school trustee for district No. 6, qualified and entered upon his duties as such. In July, 1876, he made to the court a report of the children, etc., in his district, upon which the apportionment of school money had been made. This seems to have been his last official act. He afterwards left the State, about three months before the warrants were drawn.

The transcripts from the county court show that on the third day of April, 1876, upon the recommendation of the county examiner, Goza, Mills and Dixon were, by the court, appointed *trustees* in district No. 6.

A subsequent entry, of April 8th, shows that the county examiner, in pursuance of an order to redistrict the county, made his report, showing that he had made a new school district, the territory of which he describes, to be known as No. 6. He further recommends three persons for each district in the county to be appointed as *trustees*. The report was adopted as a whole. For the 6th district appear the names of Goza, Stephens and Dixon.

These persons were recognized as directors of the district by citizens and officers of the county, including the treasurer, previous to, up to the time, and after the date of the warrants, and were then the only persons who were.

The services of the teacher were proved in reasonable accordance with the contract; and there is no evidence of fraud in drawing the warrants. They were given in substitution for three previous ones, which had been taken back and cancelled.

The county court proceedings reveal a very great misapprehension of the law. The school *act of* 1873, sec. 22, had provided for the election of a district *trustee* by the legal voters, at the annual meeting in August of each year, to hold until his successor might be elected and qualified.

The *act of December 7th*, 1875, repealed this, and provided in each district three *directors* in place of a trustee, each to hold office for three years, and until his successor should be elected and qualified. One was to be elected each year, at the August meeting, except that on the first meeting after the passage of the act three were to be elected at once, for one, two and three years, severally. Upon the formation of a new school district, the voters were to elect three directors immediately, to hold for one, two and three years, etc., as in other cases. (*Sec.* 57 *Act of December* 7, 1875.)

In case of a vacancy, the electors of the district were to assemble and fill it, in fifteen days, and in case they should fail, then the county court should appoint. (*Ib.*, sec. 60.)

It was further provided that the old trustees in the district should hold office until the directors should be elected and qualified, under the new act.

Under this act the election of McDowell as trustee in August, 1875, made him the *de jure* officer of the district until a proper board of directors should be chosen under its provisions. It does not appear that any ever was chosen by the electors. But the county court is a superior court of record, in the sense that within the scope of the *subject matters* over which it has jurisdiction, and in the absence of a showing to the contrary, it will be presumed to have acted upon facts sufficient to maintain its action. There is nothing *in the record itself*, concerning the appointment, to show that a vacancy, on the third of April, 1876, had not occurred, which the electors of the district had failed to fill;

2. COUNTY COURT: Presumption as to its acts.

and although it now, clearly enough, appears from the proof, and the record of the trustees' report in July following, that there was no vacancy, yet the appointment of the directors in April gave color of title. The subsequent establishment of No. 6 as a new district appears to have been, in fact, only a change of boundaries.

**3. OFFICER De facto.** But color of title by election, appointment or commission, is not essential, as between other parties, to constitute officers *de facto*.

Mr. GREENLEAF (*Ev.*, sec. 92, *n.* 5), describing an officer *de facto*, says that he is one who exercises an office either by virtue of some appointment or election; or of such acquiescence of the public as will authorize the presumption, at least, of a colorable appointment or election.

These directors certainly were such by the plainest and fullest proof. They were universally recognized by citizens, and such officers as were required to transact public business with them; and no one else, at the time the warrants were drawn, was claiming the right to perform the appropriate duties of their office. (*Kaufman & Co.* v. *Stone, adm'r.*, 25 *Ark.*, 336.)

The services were proven, although the treasurer had no right to enquire into that matter, nor into the validity of the original contract. It appertained to the directors.

School warrants would be of little value if the holders were required to establish their consideration to the treasurer's satisfaction, on presentation. Such rules in the administration of State and county affairs, as are prescribed by law for the purpose of subserving the wants and interests of the whole people in their general operation must be observed by the courts, although liable to abuse in counties where the predominance of an uneducated class of citizens new to self government, and uninformed as to their true interests, may for awhile present the humiliating spectacle

of school commissioners authenticating their official acts by mark. If time, and the gradual elevation of this class, may not correct this, the remedy lies in the law making power, and not in other county officers who may be more enlightened, nor in the courts.

It was the duty of the treasurer to pay the warrants out of any funds in his hands for that purpose belonging to that district, (*Act of Dec. 7th*, 1875, *sec.* 68) or for want of funds to endorse that fact on the warrant. *Gantt's Dig.*, *sec.* 1040. The court erred in refusing the mandamus.

Reverse the judgment and remand the case for further proceedings consistent with this opinion.