35435, 35509.  ALLEN *v.* HATCHETT *et al.;* and *vice versa.*

Decided January 26, 1955—Rehearing denied February 28, 1955.

*C. R. Vaughn, Jr., D. D. Veal, Peter J. Rice,* for plaintiff in error.

*Carter, Latimer & Savell, A. Ed. Lane, Jr.,* contra.

FELTON, C. J. ■ The plaintiff in error contends that, since the case was remanded to the State superior court by consent order, the Federal court never gained jurisdiction and the jurisdiction of the State court was never suspended, that the case went into default, and that the court erred in allowing the defendants to file defensive pleadings, etc. To support this contention, the plaintiff in error cites *Hunter* v. *Colquitt, 73 Ga.* 44, 46. However, that case was rendered prior to the amendment of the "Removal Act," 28 U. S. C. A., § 72. The present case must be decided under the amendment. 28 U. S. C. A., § 1446. We think the question was properly resolved by the Supreme Court of Idaho in Hopson *v.* North American Ins. Co., 71 Idaho 461 (233 Pac. 2d 799, 25 A. L. R. 2d 1040). For the benefit of the Bar, we quote at length from the Hopson case.

"It is urged by appellant that where the defendant does not make out a case for removal, the jurisdiction of the Federal Court does not attach and the State Court does not surrender its jurisdiction but may proceed with the case as if no application for removal had been made and in the instant case may order the entry of default for failure to answer or otherwise plead to the complaint within the time permitted by the statutes of this state and that defendant takes his chances when he attempts to remove a case not removable. Appellant's contention in this respect under 28 U. S. C. A. 72, prior to amendment is supported by Morbeck *v.* Bradford-Kennedy Co., 19 Idaho 83, 113 P. 89; State *v.* American Surety Co., 26 Idaho 652, 145 P. 1097; Finney *v.* American Bonding Co., 13 Idaho 534, 90 P. 859, 91 P. 318; Mills *v.* American Bonding Co., 13 Idaho 556, 91 P. 381, and many cases from other jurisdictions. See 45 Am. Jur., Sec. 179, p. 934; Sec. 204, p. 950. Appellant urges that the amendment has re-

sulted in no change in the law as announced in these cases; with this we cannot agree.

"All of these decisions were rendered under the 'Removal Act', 28 U. S. C. A. § 72, prior to its amendment effective May 24, 1949, 28 U. S. C. A. § 1446.

"In order to ascertain whether or not Congress intended to effect a change by the enactment of 28 U. S. C. A. § 1446 which would operate to void any proceedings taken in the State Court, pending the determination of the movability of the cause in the Federal Court even though it was ultimately determined that it was not in fact removable, we must look to the statute as amended, unaided by any decisions construing the amended statute, because counsel on neither side has called our attention to any case construing the statute since amended, nor have we been able to find any such case.

"The amendment of an existing act indicates that a change was intended. State ex rel. Wright v. Headrick, 65 Idaho 148, 139 P. 2d 761; Stewart v. Common School Dist., 66 Idaho 118, 156 P. 2d 194.

"It is provided under Sec. 72 in pertinent part as follows: 'Whenever any party entitled to remove any suit  .  .  .  , may desire to remove such suit from a State court to the district court of the United States, he may make and file a petition,  .  .  . in such suit in such State court at the time, or any time before the defendant is required by the laws of the State or the rule of the State court in which such suit is brought to answer or plead to the declaration or complaint of the plaintiff, for the removal of such suit  .  .  .  and shall make and file therewith a bond, .  .  .  for paying all costs that may be awarded by the said district court if said district court shall hold that such suit was wrongfully or improperly removed thereto  .  .  .  It shall then be the duty of the State court to accept said petition and bond and proceed no further in such suit.  .  .'

"28 U. S. C. A. § 1446 provides in pertinent part as follows:

" '(a)   A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a verified petition containing a short and plain statement of the facts which entitle him or them

to removal together with a copy of all process, pleadings and orders served upon him or them in such action.

" '(b) The petition for removal of a civil action or proceeding shall be filed within twenty days after the receipt by the defendant through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within twenty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter. . .

" '(c) . . . .

" '(d) Each petition for removal of a civil action or proceeding, except a petition in behalf of the United States, shall be accompanied by a bond with good and sufficient surety conditioned that the defendant or defendants will pay all costs and disbursements incurred by reason of the removal proceedings should it be determined that the case was not removable or was improperly removed.

" '(e) Promptly after the filing of such petition and bond the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the petition with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.'

"Under the earlier Act, fortified by the decisions thereunder, if it was ultimately determined that the cause was not removable, that is, that the defendant was not entitled to remove it, the defendant could not protect his rights awaiting such determination without filing an appropriate appearance in the State court, a usual practice, State v. American Surety Co., supra; and perhaps by proceeding in both courts simultaneously until the question of removability had been determined. Metropolitan Casualty Ins. Co. v. Stevens, 312 U. S. 563, 61 S. Ct. 715, 717, 85 L. Ed. 1044.

"The import of the decisions under 28 U. S. C. A. § 72 is clear to the effect that the defendant when petitioning for removal must assume the consequences if the case is remanded and he does not preserve his rights in the State court, because as the Act has been construed by the courts if the case was remanded

for want of jurisdiction, the Federal Court is regarded as never having acquired jurisdiction. Tracy Loan & Trust Co. *v.* Mutual Life Ins. Co., 79 Utah 33, 7 P. 2d 279; the rule that such proceedings in a State court following a petition for removal are valid where the suit is not in fact removable is 'the logical corollary of the proposition that such proceedings are void if the cause was removable'. Metropolitan Casualty Co. *v.* Stevens, supra, and the cases therein cited. In that case as well as in the case of Yankaus *v.* Feltenstein, 244 U. S. 127, 37 S. Ct. 567, 61 L. Ed. 1036, the clear import of each decision is to the effect that proceedings had in a State court, including the entry of default, while the petition for removal is pending in the Federal Court and before it is remanded, are valid if the cause is not in fact removable; in other words, if a party is entitled to remove a suit, (but not otherwise) and the procedural steps are taken, the State court shall proceed no further because jurisdiction has been moved to the Federal Court and should the State court proceed further, its acts in this respect would be void.

"In pointing out a better practice to be followed in the State courts under the Act prior to amendment, and at the same time recognizing the existence of the right to enter such default, the court in the Metropolitan case said: 'If, in cases like the present one, the state court is assured that the federal court will decide promptly the question of removability, it is better practice to await that decision (Chesapeake & O. R. Co. *v.* McCabe, 213 U. S. 207, 29 S. Ct. 430, 53 L. Ed. 765; Baltimore & O. R. Co. *v.* Koontz, [104 U. S. 5, 26 L. Ed. 643] supra), but we cannot say that failure to do so is a denial of a federal right if the cause was not removable.'

"With this background we will now again consider the old law, 28 U. S. C. A. § 72, and the new law, 28 U. S. C. A. § 1446. Under Section 72, after filing petition and bond in the State court it is provided that the State court shall proceed no further in the suit; however, the courts have construed this as a proscription against the State only if the cause is not [sic] removable.

"By providing in Section 1446 that taking such procedural steps effects the removal of the cause to the Federal Court, which is not found in the earlier Act, Congress has thereby expressly effected the removal of the cause to the Federal Court irrespec-

tive of the ultimate determination of the question as to whether or not it is removable; it is not thereafter in the State court for any purpose until and unless the cause is remanded; for that reason the State court is expressly prohibited from proceeding further until and unless it is so remanded; under Sec. 72 the removal was never accomplished unless it was a cause removable; under the present Act removal is accomplished and jurisdiction attaches in the Federal Court even though it may be subsequently determined that it should be and is thereafter remanded. Removability is no longer a criterion which gives or denies validity to the proceedings in the State court while a petition for removal to the Federal Court is pending; any such proceedings in the State court under the present act are not sanctioned; they are prohibited.

"Apparently to overcome the endless and multiple litigation and resulting severe hardships which arose under Section 72 as construed, the amendment was prompted not only for the purpose of removing from the State court the authority in any event to pass upon the question of removability but also for the purpose of effectuating the removal by following all the statutory steps as effectively as if the cause had originally been filed in the Federal Court, thus voiding any further proceedings in the State court until and unless the cause is remanded.

"We hold that under 28 U. S. C. A. § 1446, a case is removed from the jurisdiction of the State court upon a compliance with the procedural steps therein set forth for all purposes until and unless it is subsequently remanded to such State court; that until and unless the case is remanded no valid proceedings can be taken in the State court at any time following the filing of such petition and bond and giving notice thereof to all adverse parties and filing a copy of the petition with the clerk of the State court; furthermore, that any action so taken in the State court thereafter and prior to remanding the cause to such State court, will have no force or effect."

The Supreme Court of Indiana arrived at the same result in State v. Boone Circuit Court, 227 Ind. 327 (86 N. E. 2d 74). See 25 A. L. R. 2d 1045.

In the instant case, the jurisdiction of the State court was suspended until the case was remanded to it by the Federal court,

at which time the State court resumed jurisdiction, and the case stood as it did at the time of removal. Therefore, where the case was removed to the Federal court 22 or 23 days after service of process, when the case was remanded to the State court it was not in default, and the court did not err in allowing, on motion, the defendants to pay all costs and file their defensive pleadings instanter.

An excellent discussion of the intricacies, multiplicity, and burdens involved in the removal procedure under section 72 is contained in 20 N. C. Law Review 438.

■ The court did not err in awarding a nonsuit. The only evidence as to the facts of the collision was the testimony of the plaintiff's driver. For the sake of clarity, we quote his testimony concerning the collision: "Q. How did this accident occur? A. I was about, maybe, 350 feet or more behind this truck. Q. What kind of truck was it? A. Pick-up truck. Q. Pick-up truck, now go ahead. A. He was running along about the same speed I was, I reckon. Q. How fast was that? A. About 45 miles. Q. You were about 300 feet behind? A. Yes, sir. Q. What happened? A. He just stopped in the middle of the road; I didn't know he was going to stop there. Q. Did he have a stoplight signal? A. No, sir. Q. Did he give a signal of any kind? A. No, sir. Q. He just stopped in front of you? A. Yes, sir. Q. When he stopped in front of you, did he stop on the lane or shoulders or where? A. He stopped right there on the lane. Q. And what did you do when he stopped? A. I tried to pull around and get around him, and when I seen a car, I pulled across the road. Q. When you pulled across the road did you see the car coming? A. No, sir, I didn't see him until he cut in front of me. Q. What kind of car was right upon you? A. Chevrolet. . . Q. How long have you been driving a car? A. Two or three years. Q. You have observed cars on the road and highways, haven't you? A. Yes, sir. Q. Now, from your observation and opinion, how fast did you estimate the speed of the Chevrolet car? A. About 70 miles or a little more. Q. Now you pulled up, I believe you said you stopped, when you went to stop you didn't see this Chevrolet car coming? A. No, sir. Q. Now, when you did see him what did you do? A. I tried to go across and drive on the other side of the road. Q. Why didn't

■

you cut to the right? A. The truck was there. Q. What chances did you have? A. The only thing hit the gulley or hit the truck or hit him. Q. Or — you hit him. And did you make it across the highway into that driveway? A. Yes, sir, I was just about across when he hit. Q. Where did he hit you? A. In the side. Q. Which side? A. On the right side. Q. And you say you wasn't off the pavement, you were making your turn? A. Yes, sir. Q. When this car hit you, what was the position of your car after you had been hit? A. Bottom side up. Q. Where? A. On the left side of the road. Q. On the left side of the road you were turning into? A. Yes. Q. How far from the point where you were off was your car upside down? A. About to them benches over there. Q. About this far? (indicating) A. Yes, sir. Q. About from where you are? A. Yes, sir. Q. Was it pushed directly away or to the side, or how was it? A. Turned it over. Q. Where was the impact on your car where the Chevrolet hit you? A. It was kind of on the front bumper and door. Q. The bumper and door, and did it knock you straight or to the right? A. Straight. Q. And you rolled approximately from where you are sitting to those benches here? A. Yes, sir. Q. In other words, about 35 or 40 feet, would that be? A. Yes. ˙ . . Q. I will ask you this, Troy, at the time this accident occurred did the operator of the Chevrolet automobile apply his brakes so you could find time to make a turn? A. I don't know. Q. If he had done so, you would have been able to complete the turn? A. Yes, sir. Q. If he had, there wouldn't have been any collision? A. If he had done so there would not have been. . . Q. I believe you testified that when you were driving down this highway you were following a truck? A. Yes, sir. Q. And you were going approximately at the same speed as the truck? A. Yes, sir. Q. I believe you said the truck was some 350 feet or yards—feet, ahead of you. I believe you testified that you didn't realize the truck had started to stop, is that correct? A. Had stopped. Q. You didn't realize it had stopped. Did you ever stop? A. No, sir, I hadn't stopped. I tried to stop, I got behind him before I knew it. Q. You got behind the truck and tried to stop? A. Yes, sir. Q. And you were unable to stop, and when you found you were unable to stop you tried to cut over to the right side to stop? A. Yes, sir.

Q. And you didn't see the accident until you actually cut over on the left side of the highway? A. No, sir. Q. Was this truck on his side? A. It was on his right lane. Q. You didn't cut over into the left hand lane of traffic until you hit the truck? A. That is right. Q. And you got out, and that is the first time you saw the accident? A. When he got right behind me. Q. About how far away was he when you saw him? A. It was about a car length. Q. About a car length when you first saw him, and when you saw him you made a quick turn to avoid him? A. Yes, sir. Q. So you could not get around the truck, and you made a quick turn into the driveway. A. That's right. Q. How long did that take you? A. One second or two seconds, something like that. Q. And the only time that you had to observe this automobile was one or two seconds in which you saw him go over on the other side of the road? A. I had time to get over, I mean just a lapse of one or two seconds, maybe. Q. And you estimated his speed in that one or two seconds that you saw him? A. No, sir; he was coming pretty fast, he had to be to turn me over. Q. I understand you to say you didn't see him until he cut out in the left lane? A. No, sir. Q. And there was one or two seconds at the time you cut out there and the time of the collision? A. It might have been a little more. Q. Just that interval of a few seconds in which you had time to observe his speed? A. That's right. Q. Now, when you saw him, if he had slowed down, you wouldn't have had a collision, is that right, Troy? A. If he had slowed down, I could have made it. Q. That's your opinion. You don't know of any physical evidence that would have prevented it? A. I will state right here, I say I could have made it if he had slowed down. Q. That's your opinion, that you could have made it. Suppose he hadn't been going 50 miles per hour, could you have made it then? A. If he had slowed down a fraction, I could have made it. Q. What part of your car was hit? A. Right in the door of the right side, right there in the door between—. Q. And that is the way you had started to make the turn? A. Yes. Q. And he hit you approximately at a point forward with this door? A. Yes, sir. Q. And this accident took place on his side of the road? A. Yes, sir."

Briefly stated, the evidence shows that the plaintiff's driver

was driving about 350 feet to the rear of a pick-up truck. Both were traveling in the same direction and at a speed of about 45 miles per hour. The truck stopped in the highway without any warning or signal. The plaintiff's driver did not realize that the truck had stopped until he was upon the truck, and to avoid hitting the rear of the truck he turned to the left and attempted to drive across the highway and into a driveway on the opposite side of the highway. Before reaching the driveway he was struck by the defendant's vehicle.

The only negligence on the part of the defendants the evidence even tends to establish is excessive speed. The evidence fails to authorize a finding that the defendant Hatchett was exceeding the legal speed limit or that his speed was unsafe and negligent under the circumstances. The witness observed the speed of the defendants' automobile for only two seconds and only while it traversed a distance of only a car's length. This is not sufficient for him to form a conclusion as to the speed of the automobile, and the evidence furnishes no basis on which a jury could find the automobile's speed. "To render an estimate as to speed of probative value, however, the witness must possess some experience in judging speed and must have had a reasonably good opportunity for observation." Blashfield's Cyc. of Auto. Law & Practice, Vol. 10, Part 1, 333, § 6559. "An estimate of speed, based on a momentary glimpse of a car approaching head on, has been held to be 'obviously of little value', even in a civil action (Mulheirn v. Brown, 322 Pa. 171, 173 (185 A. 304 (Stern, J.); Ealy v. N. Y. Central R. R., 333 Pa. 471, 476, 5 A. 2d. 110 (Barnes, J.); Anderson v. Perta, 138 Pa. Superior Ct. 321, 323-4, 10 A. 2d 898 (Baldridge, J.). See also, Craft v. Hines, Dir. Gen., 272 Pa. 499, 501, 502, 116 A. 379." Commonwealth v. Hatch, 149 Pa. Super. 289 (27 A. 2d 742). There is no other evidence which would furnish the jury a basis upon which they could make a finding as to the automobile's speed.

The evidence did not authorize a finding that the defendants were negligent in any particular, and the court properly awarded a nonsuit.

The cross-bill of exceptions is dismissed.

The court did not err in allowing the defensive pleadings filed and in awarding the nonsuit.

*Judgments affirmed. Quillian and Nichols, JJ., concur.*