[Civ. No. 9227. Third Dist. Mar. 8, 1957.]

FLORIAN F. DAUENHAUER, Petitioner, v. SUPERIOR COURT OF SONOMA COUNTY, Respondent; W. E. BARBER et al., Real Parties in Interest.

White & White and Arlington C. White for Petitioner.

No appearance for Respondent.

Cyrus B. King and Ernest I. Spiegl for Real Parties in Interest.

VAN DYKE, P. J.—Heretofore, petitioner filed an action in the respondent court, entitled *"Florian F. Dauenhauer, plaintiff* v. *W. E. Barber and Betty L. DeVoto, . . . defendants,"* seeking to recover defaulted cash rentals on a hop-picking machine, damages for other breaches of the lease, and repossession of the machine. Defendants Barber filed their

answer, and W. E. Barber filed a cross-complaint. Plaintiff's demurrers to answer and cross-complaint were sustained with leave to amend. Amended pleadings were filed, and the court by order extended the plaintiff's time to plead to the pleadings as amended. The Utah Home Fire Insurance Company, which had been joined as a cross-defendant, filed its petition for removal of the cause to the United States District Court. The cause was removed during plaintiff's extended leave to further plead. The federal court remanded the cause to the respondent court, and within the unexpired time, not counting the interim of federal control, plaintiff demurred to the amended answer and cross-complaint and moved to strike both pleadings. When he filed these pleadings, plaintiff was unaware that, on the day following the remand and at the request of the cross-complainant, his default had been entered. Plaintiff's demurrers and motions to strike came on for hearing, and at that time cross-complainant called the respondent court's attention to the default and objected to the court's hearing the demurrers and motions on the merits. The question of the propriety of the clerk's entering plaintiff's default for failure to plead in time presents the initial controversy herein, and before going further we will give it our attention.

Under the Removal Act, 28 U.S.C.A. section 72, prior to its amendment, May 24, 1949, 28 U.S.C.A. section 1446, it had often been held that where, after removal, the moving party failed to make out a case for removal, the decision remanding was a decision that the jurisdiction of the federal court had never attached, and the jurisdiction of the state court had never been surrendered; that, therefore, in the interim the state court could proceed, in the absence of objection, and could default a party for failure to answer or otherwise plead within the time permitted by the statutes of the state or the orders of the state court. In effect, the cases held that the moving party took his chances when he attempted to remove a case not in law removable. ▆ The amendment, effective May 24, 1949, *supra*, materially changed the language of the statute, referring to the effect of removal. From the standpoint of jurisdiction, the matter early received the attention of the courts. One of the first cases appearing in the reports is *Hopson* v. *North American Ins. Co.*, 71 Idaho 461 [233 P.2d 799]. After noting the changes in the statute worked by the amendment, the court said at page 802 [233 P.2d]:

"By providing in Section 1446 that taking such procedural steps effects the removal of the cause to the Federal Court, which is not found in the earlier Act, Congress has thereby expressly effected the removal of the cause to the Federal Court irrespective of the ultimate determination of the question as to whether or not it is removable; it is not thereafter in the State court for any purpose until and unless the cause is remanded; for that reason the State court is expressly prohibited from proceeding further until and unless it is so remanded; under Sec. 72 the removal was never accomplished unless it was a cause removable; under the present Act removal is accomplished and jurisdiction attaches in the federal court even though it may be subsequently determined that it should be and is thereafter remanded. Removability is no longer a criterion which gives or denies validity to the proceedings in the state court while a petition for removal to the federal court is pending; any such proceedings in the state court under the present act are not sanctioned; they are prohibited.

.   .   .   .   .   .   .   .   .   .   .   .   .

"We hold that under 28 U.S.C.A. § 1446, a case is removed from the jurisdiction of the State court upon a compliance with the procedural steps therein set forth for all purposes until and unless it is subsequently remanded to such State court; that until and unless the case is remanded no valid proceedings can be taken in the State court at any time following the filing of such petition and bond and giving notice thereof to all adverse parties and filing a copy of the petition with the Clerk of the State Court; furthermore, that any action so taken in the State court thereafter and prior to remanding the cause to such State court, will have no force or effect.''

In *Allen* v. *Hatchett*, 91 Ga.App. 571 [86 S.E.2d 662], the court adopted the reasoning of the Idaho court in a case where the contention was made that, where pending remand and after removal, the time allowed to appear and plead as given by state statute or state court order had elapsed, the case went into default, and the state court erred on remand in allowing defensive pleadings to be filed. The Georgia court said:

"In the instant case, the jurisdiction of the State court was suspended until the case was remanded to it by the Federal court, at which time the State court resumed jurisdiction, and the case stood as it did at the time of removal. Therefore,

where the case was removed to the Federal court 22 or 23 days after service of process, when the case was remanded to the State court it was not in default, and the court did not err in allowing, on motion, the defendants to pay all costs and file their defensive pleadings instanter." (See also, annotation, 25 A.L.R.2d 1045, citing *State* ex rel. *Allis-Chalmers Mfg. Co.* v. *Boone Circuit Court*, 227 Ind. 327 [86 N.E.2d 74].)

On the authority of the foregoing decisions, we hold that when the cause was remanded to the respondent court by the federal court, the state of suspension theretofore existing terminated, and plaintiff had the unexpired time theretofore given him within which to file his demurrers and motions to strike. Since all this appeared upon the record of respondent court, the clerk was without authority to enter the default, and his attempt to do so was a nullity. (*Crofton* v. *Young*, 48 Cal.App.2d 452, 457 [119 P.2d 1003].)

The act of the clerk in entering the default being void, the demurrers and the motions to strike were properly filed by the clerk, and it was the duty of the court to hear and decide them on the merits. They were brought on for hearing and argued by counsel for petitioner, but at the close of that argument, counsel for cross-complainant called the court's attention to the record of default and contended that the pleadings were filed too late and must be ignored. Counsel then proceeded to argue on the merits, and the entire matter was briefed and submitted to the court for decision. Thereafter, the court filed a document entitled "Order Denying Motions and Overruling Demurrers," and concerning the validity of the default, said: ". . . [T]he effect of the entry of the default was to put the plaintiff out of court and disentitle him to make any motion or demurrer relating to said answer or cross-complaint until such default is set aside in a proper proceeding." However, having so declared, the court continued: "Upon the theory that a general demurrer may be raised at any time, the court has carefully examined the first amended answer and the first amended cross-complaint and each of the separate defenses and grounds of cross-complaint set out therein, and has reached the conclusion that they stand the test of a general demurrer notwithstanding they contain much conclusionary and evidentiary matter." The court then stated: "It is ordered that said motions of plaintiff be denied and said demurrers be overruled upon the ground that they and each of them were not timely and have

no standing by reason of the default of plaintiff having been entered previous to the filing of said motions and demurrers.''

After the filing of the foregoing document, petitioner, as plaintiff and cross-defendant, moved to set aside and vacate the order denying motions and overruling demurrers and to set aside and vacate the entry of the default. After hearing and submission of these motions, the court filed a document entitled ''Opinion and Order.'' Concerning a contention that the ''Order Denying Motions and Overruling Demurrers'' was void, the court said: ''I cannot agree that the order is void. It was based partly upon the theory that plaintiff and cross-defendant was in default and not timely in the filing of said motions and demurrers, and partly upon the theory that treating said motions and demurrers as attacks upon the general sufficiency of the amended answer to state a good ground of defense, or of the amended cross-complaint to state a good cause of action, said pleadings meet the test of a general demurrer available to the plaintiff and cross-defendant at any time. . . . It must be apparent from said order of November 1, 1956, [the order overruling demurrers and denying motions to strike] that the court considered that a general demurrer to the first amended answer and the first amended cross-complaint could be raised at any time and reached the conclusion that the first amended answer and the first amended cross-complaint stood the test of a general demurrer and that such general demurrer was intended to be overruled. . . . [T]he effect of the entry of the default upon the amended cross-complaint was to put the cross-defendant out of court so far as said cross-complaint is concerned and to disentitle him to make any motion or demurrer relating to said cross-complaint. . . . Plaintiff and cross-defendant's motions and special demurrers with respect to the amended answer came too late, had no standing whatsoever and the objection of defendant and cross-complainant, W. E. Barber, to the consideration thereof is sustained. . . . The motions to set aside and vacate the order denying motions and overruling demurrers made November 1, 1956, to set aside and vacate entry by the clerk of the default dated October 18, 1956, and to reinstate the plaintiff and cross-defendant's motions and demurrers as submitted . . . are denied. . . .''

It is apparent from the foregoing that, notwithstanding the court considered throughout that the entry of the default was valid, and that, therefore, petitioner's demurrers and motions

directed to the amended pleadings were not filed timely, and that, as the court put it, the petitioner was thus out of court with respect to those filings, nonetheless, the court did consider, upon the merits, the general demurrers addressed to the amended answer and cross-complaint and determined that said demurrers were not well taken. Obviously, the parts of the motions to strike which sought to strike the entire pleadings as sham would likewise fall, if the court determined that the pleadings withstood a general demurrer. It is equally apparent, however, that so far as the special demurrers were concerned, and so far as the motions to strike portions of the pleadings were concerned, upon such grounds as that they contained allegations that were mere conclusions and allegations that were not of ultimate fact but were made up of matters of evidence, the court did not consider the merits. This is further illustrated by the court's statement in its opinion that the pleadings did contain much conclusionary and evidentiary matters. Since the court did rule upon the general demurrers and the general motions to strike the entire pleadings, it cannot be said that it refused to perform a duty cast upon it under the law; and this court, therefore, cannot issue mandate directing it to do that which it has already done. From this record, however, it cannot be fairly said that the trial court did not refuse, by reason of its mistaken belief as to the validity of the default, to rule upon the special demurrers and the motions to strike addressed to portions of the pleadings attacked. To that extent, the court refused to perform a duty cast upon it by law, and the mandate of this court should issue, directing it now to do so.

This matter has thus far proceeded upon petition and order to show cause, which order to show cause has been regularly heard upon the calendar of this court after the issues of law presented by the petition had been the subject of written opposition and thorough briefing by respondent court through the medium of the real party in interest. Since it is apparent that only legal issues are presented for determination, and that there is and could be no factual issue to dispose of, and, since the matter has been thoroughly briefed and argued at a full hearing had in open court, it is best that ultimate relief to the extent we have indicated be now granted without proceeding to take the usual intermediary step by issuing an alternative writ. Nothing could be accomplished thereby except further delay in the orderly progress of the cause.

Although such procedure is exceptional, it is nevertheless authorized. (3 Witkin, California Procedure, pp. 2550-2551, § 59, Extraordinary Writs, and authorities there cited.)

Let a peremptory writ issue directed to respondent court, commanding that it proceed to rule upon the special demurrers and special motions to strike, directed to the amended answer and cross-complaint on file in the cause.

Peek, J., and Warne, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.