CUMMINGS *v.* LORD'S ART GALLERIES.

5-1296                                        302 S. W. 2d 792

Opinion delivered June 10, 1957.

[Rehearing denied July 1, 1957]

*B. W. Thomas* and *Richard W. Hobbs,* for appellant.

*R. Julian Glover* and *D. D. Panich,* for appellee.

J. SEABORN HOLT, Associate Justice. This litigation involves an auction sale of a diamond ring. Appellant, Cummings, a non-resident, while a visitor in Hot Springs, Arkansas [on July 1, 1954] and attending an auction of appellee's, made a bid of $900 on a ring which contained a 2.28 carat diamond surrounded by four smaller diamonds "weighing 10 points". His bid of $900 was the highest and the auctioneer closed the sale to appellant for this amount. [Federal excise tax and state sales tax when added to the sale price made a total of $1,008.] Following the sale, Cummings paid $50 cash and gave his personal check for $158, on which he later stopped payment, and refused to pay the balance. On November 29, 1955 he filed suit against appellee alleging, in effect, that at the time he purchased the ring appellee represented to the plaintiff that the said diamond ring was a part of and came from the estate of the late Fanny Brice; that the Chase National Bank of New York City, at the instance of the executors of the Brice Estate, had appraised the ring at $5,250; that appellee knew that such representations and warranties were fraudulent when made, were made with the intent that appellant should rely thereon and that he purchased the ring in reliance on said representations and warranties. He further alleged that "upon learning that said warranties and representations were

not true, he rescinded the sale and demanded a return " of $50 cash which he had paid on the purchase price. He further alleged that "the said false and fraudulent representations were made knowingly, were willful and made with malice for the purpose of deceiving and defrauding this plaintiff."

Appellant prayed "that the purchase price of the ring One Thousand Eight Dollars, ($1,008.00), less the Fifty Dollars ($50.00) now in the hands of the defendant, its agents, servants or employees, return of which has been refused, be deducted from the value of said ring as warranted and that he have judgment against the defendant for the sum of Four Thousand Two Hundred Ninety Two Dollars ($4,292.00) . . ." and that he be awarded also $10,000 as punitive damages. Appellees answered with a general denial. On the day of trial appellee tendered into court the $50 paid by appellant, and at the close of all the testimony asked for an instructed verdict in favor of appellee, which the court refused to give. The jury returned a verdict in appellant's favor for $51 actual damages and $2,000 punitive damages. This appeal followed.

For reversal appellant first contends that: "The court erred in granting defendant's motion for judgment notwithstanding the verdict."

The record reflects that on November 17, 1956, appellee filed a motion in which it prayed that the trial court set aside its judgment previously entered on the jury's verdict and enter a judgment in appellee's favor notwithstanding the jury's verdict. Thereafter, on December 5, 1956, the trial court granted this motion of appellee. The court's order granting this motion contains this recital: "The court erred in failing to sustain the motion or motions for directed verdict for the defendants. [appellees] The evidence before the court is clear and convincing that plaintiff [appellant] breached his contract by stopping payment on his check in the sum of $158.00, given as a down payment for the diamond ring mentioned in the complaint. The evidence shows plain-

tiff, at the time he breached his contract, had no knowledge of the value of the said ring, had no knowledge of its market value or anything else concerning said ring, since the ring had never been in his possession. The contract was executory rather than executed."

We have concluded that the court was correct in sustaining this motion. The evidence, in addition to that stated above, tends to show that after the ring had been sold to appellant, as above indicated, he left his seat in the auction gallery, went to the rear of the room where he paid $50 in cash to appellee, and gave his personal check for $158 on the purchase price, and agreed to pay the balance within two weeks and receive the ring. The parties were strangers to each other and were dealing at arm's length. Following the sale the diamond ring was placed in an envelope and sealed, in the presence of appellant Cummings. The envelope bore a duplicate tag showing the same number, as was on the envelope, in which the diamond was placed, and there was marked on the duplicate ticket, which was delivered to appellant, the price of the ring, the amount deposited and balance due. The ring was then put in appellee's safe. The next morning appellant returned. He testified: "So the next day I went back down and told him that I didn't know anyone in Hot Springs; that I knew one of the vice presidents in the First National Bank in Shreveport appraised all the diamonds for the bank and I would like for him to mail it down there to them for appraisal, that I would be there about twenty days longer. As soon as the appraisal came back, if it met the value, or anything like the value he had stated it had, that I would give him a check for the balance due. But he wouldn't do it. He said, 'No. You go ahead and buy the ring. You can have anybody appraise it you want to.'" Appellant further testified that when appellee refused to allow him to send the ring out of the state for appraisal he became suspicious and immediately stopped payment on the $158 check.

We find no evidence in the record that it was a part of appellee's agreement with appellant that appellant

would be given possession of the ring with permission to send it out of the state for appraisal before appellant paid the purchase price. Appellee does not deny that it represented to appellant that he could have the ring appraised by anyone of his own choosing, anywhere, after he had paid the purchase price. This identical ring was sold by appellee to another party on August 7, 1954, for $900.

We think the undisputed evidence shows that when appellant stopped payment on the $158 check above, he breached his contract with appellee and, therefore, that appellee was justified in treating the contract as rescinded by appellant. "The failure of one party to a contract to comply with its terms releases the other party from compliance with it." *Grayling Lumber Co.* v. *Hemingway,* 128 Ark. 535, 194 S. W. 508. Also see *Ford Hardwood Lbr. Co.* v. *Clement,* 97 Ark. 522, 135 S. W. 343.

Next appellant argues: "That the lower court erred in failing to grant plaintiff's motion for judgment by default and in allowing defendant to file its answer after more than 20 days subsequent to the service of summons without proper application having been made by the defendant for an extension of the time within which to file an answer within the 20-day period." In connection with this contention, the record shows that the order of the filing of pleadings in this case is correctly summarized and stated by the trial court in his "Memorandum Opinion" on September 4, 1956, as follows: "The defendant [appellee] filed a motion requesting the plaintiff to make his complaint more definite and certain and reserving the right to plead further. This motion was filed with the Clerk on December 27, 1955; however, the Clerk has filed an affidavit to the effect that his office was closed from December 22, 1955 until December 27, 1955, and that all pleadings received by his office during that time were marked filed on December 27, 1955. The defendant has also filed the affidavit of one Lucille Steele to the effect that she was the secretary of D. D. Panich, Attorney, for the defendant, and that on the 22nd day of December, 1955 she placed in the United States Mail the motion to

make more definite and certain above referred to, a copy of which motion was mailed to counsel for the plaintiff on December 22, 1955. The plaintiff, in his memorandum brief, makes the following statement: 'Plaintiff will ignore defendant's contention that he mailed the said motion to the Clerk of the Court on the 22nd day of December.' On January 9, 1956, the defendant filed an answer to the complaint. On the following day, January 10, 1956, the plaintiff filed a motion for default judgment for the reason that the defendant had not filed an answer within the statutory time . . . The court holds that the motion filed by the defendant to make the complaint more definite and certain was filed within the twenty-day period after the service of summons, and that the motion tolled the running of the statute as to judgment by default . . . The motion of the plaintiff for judgment by default is overruled . . .''

The court then found from the above pleadings that the motion filed by appellee was, in effect, to make appellant's complaint more definite and certain and that same was filed within the 20-day period after the service of summons and thereby tolled the running of the statute as to judgment by default, [Act 49 of 1955, now § 27-1135 Ark. Stats. 1947] and overruled appellant's motion for judgment by default. We think the action of the court in the circumstances was correct.

As indicated, appellee's motion, the record shows, was mailed from attorney Panich's office in Little Rock by his secretary on December 22, 1955, and she on the same date forwarded by mail to Mr. Thomas, appellant's attorney, a copy of said motion. In due course these motions so mailed should have reached the office of the Clerk of Garland County, and appellant's attorney, on December 23, the following day after posting. Since the clerk testified that his office was closed from December 22 to December 27 [Christmas holidays] and he did not file the motion in question until December 27, in the circumstances, we hold that but for what amounted to an unavoidable casualty or misfortune the motion would have reached the clerk in due course on the 23rd, and,

therefore, the trial court correctly held that the motion must be considered as having been filed within the 20-day period after the service of summons and that the appellee, by filing this motion and pleading put him in court and entered his general appearance for all purposes, and preserved appellee's right to file his answer January 9, 1956, setting up any defense that he might have. "Any action on the part of defendant, except to object to the jurisdiction which recognizes the case as in court will amount to a general appearance. 3 Cyc. 504. Any taking part in proceedings will constitute a general appearance." *Sager* v. *Jung & Sons, Co.*, 143 Ark. 506, 220 S. W. 801.

Finding no error, the judgment is affirmed.