Easley *v.* Inglis.

5-2364                                    346 S. W. 2d 206

Opinion delivered May 15, 1961.

590

House, Holmes, Butler & Jewell, for appellants; Fenton Stanley, Guardian Ad Litem for the minor cross-appellant, Christine Gross.

Terral & Rawlings and Gail O. Matthews, for appellee.

ED F. McFADDIN, Associate Justice. This litigation stems from a traffic mishap which occurred near Malvern when an automobile driven by Miss Christine Gross (and owned by her father, Frank Gross) struck the side of a truck-trailer driven by Travis D. Easley (and owned by his father, F. A. Easley); and the Gross car swerved into a building owned by Foster Inglis and occupied by L. D. Burrow as a grocery store.

Inglis and Burrow (appellees here) sued the owners and drivers of both the Gross automobile and the Easley truck, alleging that the four defendants were jointly and severally liable to Inglis and Burrow for the damages sustained by the appellees. There were denials by each defendant; a cross-complaint by the Grosses against the Easleys; and a "counterclaim" by the Easleys against the Grosses. With issues joined, the causes were tried by the Circuit Judge, a jury being waived, and resulted in judgments in favor of Inglis for $675.00 for damage to the building, and in favor of Burrow for $750.00 for damage to the grocery fixtures and stock. These judgments were against all four of the defendants, jointly and severally. The Court also found that the defendant Christine Gross and the defendant Travis Easley were each guilty of fifty percent. negligence which caused the collision and therefore that neither the Grosses nor the Easleys could recover against the other. The Easleys appealed as against Inglis, Burrow, and the Grosses; and

the Grosses appealed as against Inglis, Burrow, and the Easleys.

I. *The Easleys Say: "The Court erred in refusing to grant the counterclaimants' motion to strike the answer of the defendants, Christine Gross and Frank Gross, to the counterclaim and in failing to award a default judgment against the defendants, Christine Gross and Frank Gross, in favor of the counterclaimant, F. A. Easley, on his counterclaim."* As heretofore mentioned, the Grosses cross-complained against the Easleys, and the Easleys answered and incorporated in the answer a "counterclaim" against the Grosses alleging: that Christine Gross was a minor fourteen years of age, driving her father's car with his knowledge and consent; that Christine Gross was guilty of all of the negligence that caused the mishap; that the damage to the Easley truck was $600.00; and that the Easleys should recover $600.00 from the Grosses and should also have judgment over against the Grosses for any amount that Inglis and Burrow might recover against the Easleys. This "counterclaim" was filed on February 4th, and twenty days later the Grosses filed an answer to the "counterclaim" denying all allegations.

The Easleys then filed a motion to strike the answer to the "counterclaim" as filed too late, and also to render judgment by default for the Easleys against the Grosses on the "counterclaim." The Trial Court denied the said motion of the Easleys, and the first point in the Easley brief challenges this ruling of the Trial Court. The Easleys rely on § 27-1137, Ark. Stats., which reads: "If the answer contains a counterclaim or set-off, a reply shall be filed within five (5) days, or, in the cases at law, upon the calling of the case for trial, if it be called before the expiration of the said five (5) days." The Easleys claim that under § 29-401, Ark. Stats., as amended, they are entitled to judgment by default since the Grosses did not answer the "counterclaim" within the time provided by § 27-1137, Ark. Stats.[1]

[1] For the future guidance of the Bench and Bar, we call attention to the fact that by Act No. 218 of 1961, the Legislature has amended § 27-1137, Ark. Stats. to allow twenty days in which to answer a counterclaim.

We conclude that the Easleys have failed to show that the ruling of the Trial Court was erroneous, either in refusing to strike the answer of the Grosses to the "counterclaim", or in refusing to render judgment by default against the Grosses; and there are several reasons which support our conclusions. (1) The Easleys rely on our opinion in *Walden* v. *Metzler,* 227 Ark. 782, 301 S. W. 2d 439, which was rendered when Act 49 of 1955 was in effect. After the opinion in *Walden* v. *Metzler,* the Legislature amended Act 49 of 1955 by Act 53 of 1957, which added this concluding language: ". . . and that nothing in this act shall impair the discretion of the Court to set aside any default judgment upon showing of excusable neglect, unavoidable casualty, or other just cause." The 1957 Amendment was considered by us in *Fitzwater* v. *Harris,* 231 Ark. 173, 328 S. W. 2d 501, in which we recognized that the Trial Court had authority to set aside a default, even if one had been granted, for either of three causes: (a) excusable neglect; (b) unavoidable casualty; or (c) other just cause. We cannot say that any of these three causes was absent in the case at bar. (2) Secondly, it is difficult to decide whether the claim of the Easleys against the Grosses was a "*counterclaim*" or a *cross-complaint.* If it were a cross-complaint, the Grosses had twenty days in which to file an answer under § 27-1135, Ark. Stats. The distinction between counterclaims and cross-complaints is so uncertain[2] in the statutory and judicial language of this State that the attorney for the Grosses might well have considered, and might have persuaded the Trial Court, that the so-called "counterclaim" of the Easleys was in fact a cross-complaint. At all events, the Trial Court could have held that the failure of the Grosses' attorney

---

[2] For whatever it may be worth to anyone seeking to make a present-day distinction between counterclaim and cross-complaint in Arkansas, we mention that the Civil Code of 1869, § 117, defined counterclaim: "The counterclaim mentioned in this chapter must be a cause of action in favor of the defendants, or some of them, against the plaintiffs, or some of them, arising out of the contract or transactions set forth in the complaint, as the foundation of the plaintiff's claim, or connected with the subject of the action." But that by Act 267 of 1917 (as now found in § 27-1123, Ark. Stats.) this definition was changed to read: "The counterclaim mentioned in this chapter (§§ 27-1121 to 27-1125, 27-1129, 27-1130) may be any cause of action in favor of the defendants, or some of them, against the plaintiffs, or some of them."

to answer within five days might have been excusable neglect under the facts. (3) Finally on this point, we conclude that, even if the answer to the "counterclaim" had been stricken, testimony would still have been required to determine the amount of the damages that the Easleys claimed against the Grosses; and, in the trial, the Grosses could have shown under their cross-complaint against the Easleys, the same facts that were developed in this case. With those facts developed, the Trial Judge, sitting as a jury, could well have decided, as he did, that Travis Easley and Christine Gross were each fifty per-cent. negligent, and that consequently neither could recover against the other. We hold this point of the Easleys to be without merit.

II. *The Easleys Say*: *"The Court erred in finding that the defendants, F. A. Easley and Travis D. Easley were liable for fifty percent of the damages suffered by the plaintiffs, and that the other defendants were liable for fifty percent of the plaintiffs' damages; and the Court also erred in finding against F. A. Easley and Travis D. Easley, on their counterclaim, the Court's judgment thereon is not based on the proper evidence, is not based on circumstantial evidence and is contrary to the evidence."*

The *Guardian ad litem* for Christine Gross, in the brief to support the cross-appeal against the Easleys, denies all of the foregoing and claims that Travis Easley was guilty of all of the negligence that caused the collision, and that Christine Gross and her father should recover damages against the Easleys.

As we see the evidence, there is an irreconcilable conflict between the testimony of Christine Gross and Travis Easley:

(a) Christine Gross testified that her car would not start; that she and her escort induced the driver of a pick-up truck to give a push to her car to start the motor; that she did not have her lights burning when the truck first began pushing her car but that she turned on the lights when the motor started, which was about a quarter of a mile before the scene of the collision. Travis

Easley testified that he turned off the traveled highway to consult a road map; that he looked in both directions before re-entering the main traveled highway; that he did not see any vehicles coming; but that when he saw the Gross car an instant before the impact, its lights were burning.

(b) Travis Easley testified that the Gross car was traveling 60 to 80 miles an hour. Christine Gross testified that she had just picked up enough speed to start the car and was going approximately 30 or 40 miles an hour.

(c) Christine Gross testified that another car was approaching her and that the lights from the other car blinded her so that she did not see the Easley truck until she was too close to stop. Travis Easley stated that no other cars passed at that time from either direction.

(d) Christine Gross stated that it appeared to her that Easley (who had driven the truck and trailer from the highway into the driveway area of the Wilcox Bait Shop) was making a "U" turn and that his truck appeared to be pulling out into the highway as in an arc. Travis Easley denied that he was making a "U" turn, stating that he was angling out into the highway with the intention of going down to the junction of Highway 84 in order to turn around. He did not explain how he knew that there would be a place to turn around at the junction, or whether it could be readily observed at night from the bait shop where he had stopped his truck.

We have detailed enough of the testimony to show that according to Christine Gross she was free of all negligence, and according to Travis Easley he was free of all negligence. The Court found that Christine Gross was under a duty to keep a reasonable and prudent lookout ahead for other vehicles, persons, or property which might be on or alongside the highway so as to constitute an immediate hazard. (§ 75-601 et seq., Ark. Stats.) However, the Court further held that it was equally apparent that the collision could have been avoided by Travis Easley had he kept a proper lookout; that, even

if the headlights of the Gross car were not burning when he began moving his truck, a proper lookout would have revealed the approaching automobile from the head-lights of the pick-up truck which was pushing it; and that, under the provisions of § 75-624, Ark. Stats., "The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right-of-way to all vehicles approaching on said highway." The Trial Judge saw these parties and heard them testify; and he reached the conclusion that the contributory negligence of the parties was equal, and that, under the Comparative Negligence Statute (§ 27-1730.1 et seq., Ark. Stats.), neither party could recover against the other. We hold that there is substantial evidence to support the Court's finding and judgment in the disputes between the Easleys and the Grosses.

III. *Both The Easleys And The Grosses Claim*: *"The Court erred in awarding judgment in favor of the plaintiffs in the amounts stated in the judgment and said judgment thereon was not based on proper evidence nor upon evidence of any circumstance."* The car driven by Christine Gross struck the Easley truck and veered to the other side of the road into a store building which was owned by the appellee L. D. Burrow and occupied by the appellee Foster Inglis as a grocery store.

To show the extent of the damage to the building, Mr. Inglis established by J. W. Neighbors, the contractor who repaired the building, the full amount of the repair work and the cost of the same. The total amount that Inglis paid Neighbors for such repairs was $675.00; and Neighbors said that such was to ". . . put back (the damaged building) in as good condition as it was in." The case was tried by both sides on the theory that the damages to the building were temporary, rather than permanent; and in *Benton Gravel Co.* v. *Wright*, 206 Ark. 930, 175 S. W. 2d 208, we said:

"Of course, if the injuries were temporary, then the rule would be that where the injury to real property is temporary, the measure of damages, in a case like this one, is the cost of the restoration to condition prior

to the injury plus decreased rental value from the time of injury to the time of award for restoration. *Railway Co.* v. *Jones,* 59 Ark. 105, 26 S. W. 595; 15 Am. Jur. 519; 25 C. J. S. 'Damages,' § 84 p. 605; West's Arkansas Digest, 'Damages,' § 109.''

The Trial Court allowed Mr. Burrow $750.00 as damages to his fixtures and stock of groceries in the building; and it is claimed that the evidence was insufficient to support such an award. Mrs. Burrow testified that she was familiar with the damaged items and prices of same; and that the total damages to all the items were slightly more than $918.00. Mr. Burrow testified that the damaged property was listed at selling price and that it had a mark-up of between 15% and 20%; that is to say, slightly in excess of 15% was added to the cost of the merchandise to establish the retail selling price. The Trial Court was evidently familiar with our holding in *Gen. Fire Est. Co.* v. *Beal-Doyle D. G. Co.,* 110 Ark. 49, 160 S. W. 889, and *Whaley* v. *Crutchfield,* 226 Ark. 921, 294 S. W. 2d 775, and deducted slightly more than 15% from the $918.00, and awarded $750.00 as damage to the stock and fixtures. The evidence supports this amount.

We hold that the Trial Court did not err in awarding a judgment in favor of the appellees, as hereinabove set out, with said judgment to be paid jointly and/or severally by the Easleys and the Grosses. The judgment of the Circuit Court is therefore in all things affirmed, and the *Guardian ad litem* for Christine Gross is allowed the sum of $50.00 for his brief in this Court, which amount is to be taxed as costs.