ALLSTATE INSURANCE COMPANY *v.* Ken BOURLAND, Individually and as Administrator of the Estate of Jodi Bourland

88-26                                                    758 S.W.2d 700

Supreme Court of Arkansas
Opinion delivered October 10, 1988
[Rehearing denied November 7, 1988.*]

---

*Purtle and Hays, JJ., would grant rehearing.

*Friday, Eldredge & Clark*, by: *William H. Sutton* and *Kevin A. Crass*, for appellant.

*Rees Law Firm*, by: *David Rees*, for appellees.

DAVID NEWBERN, Justice. This is a unique default judgment case. The appellee, Ken Bourland, sued the appellant, Allstate Insurance Company, alleging entitlement to uninsured motorist coverage with respect to an accident in which his daughter, Jodi Bourland, was killed. He sued as administrator of the daughter's estate and individually for damages to a car owned by him. Allstate denied coverage, claiming it had notified Mr. Bourland of cancellation. As Allstate is a nonresident corporation, it had 30 days to answer the complaint. Ark. R. Civ. P. 12(a). The complaint was filed April 22, 1987. On May 21, 1987, an answer and removal petition were filed in a federal court. Nothing further was filed in the circuit court until June 17, 1987, when

copies of the removal documents were filed. Mr. Bourland moved for default judgment in the circuit court on June 19, 1987. The federal court remanded the case to the circuit court on June 24, 1987, after finding that Allstate had failed to file the removal documents with the circuit court "promptly" as required by 28 U.S.C.A. § 1446(e) to effect removal. Thereafter, the circuit court entered a default judgment against Allstate. The principal question is whether the circuit court should have refused default judgment because an answer had been filed in the federal court within the time prescribed by Rule 12(a) for answering in the circuit court. Mr. Bourland cross-appeals from the circuit court's ruling that he is not entitled to an attorney fee and penalty pursuant to Ark. Code Ann. § 23-79-208 (1987). We hold the court correctly entered the default judgment and that it was not error to refuse the fee and penalty. We affirm on appeal and on cross-appeal.

At a hearing on the default judgment motion, the attorney representing Allstate testified that copies of the removal documents were prepared for filing with the circuit clerk and that she directed her secretary to place them in the mail to the circuit clerk. An affidavit of the secretary to the effect that she did so on May 21, 1987, was presented. The attorney testified that file-marked copies of the pleadings were returned to her by mail from the federal court, but there was no testimony that any such copies were returned to her from the circuit clerk's office. Counsel for Mr. Bourland presented a copy of a letter from Allstate's attorney to a lawyer representing a plaintiff in a companion case, which was removed to the federal court, arising out of the same accident. The letter showed copies of the removal petition and related documents were being sent to the circuit clerk with a copy of the letter to counsel. By a similar letter, dated May 21, 1987, Allstate's lawyer gave notice to Mr. Bourland's lawyer of the attempted removal. However, it contained no indication that a copy of the letter and copies of the documents it enclosed were mailed to the circuit clerk. By comparison of these letters, Mr. Bourland sought to show that the mailing to the circuit clerk had not taken place.

An affidavit from the circuit clerk was presented, in which she stated that she received no answer in the case before June 16, 1987, and received only the "documentation . . . to be filed . . .

on June 17, 1987." In the order declaring Allstate in default, the circuit judge found as a matter of fact that no notice of removal was filed with the circuit clerk until June 17, 1987.

Allstate contends the circuit court erred in failing to consider the answer filed in the federal court sufficient to satisfy the requirement of Ark. R. Civ. P. 12(a) that an answer be filed within 30 days. Alternatively, Allstate contends the default should have been set aside pursuant to Ark. R. Civ. P. 55(c) due to "excusable neglect, unavoidable casualty, or other just cause."

## 1. Default

Allstate is unable to cite, and we have been unable to find, any case in which there was a remand from the federal to the state court where it was held that a state court must treat a pleading filed in the federal court as having been filed in the state court for any purpose. Mr. Bourland has been unable to cite any authority, and we know of none, holding that a default judgment must be entered where a case has been remanded from the federal court to the state court after, and by reason of, a failure to comply with the requirement of 28 U.S.C.A. § 1446(e) that removal papers be promptly filed in the state court in order to effect the removal.

Prior to a change in the federal law which occurred in 1949, an order of the federal court to which removal was sought was required to complete removal. A party seeking to remove was required to meet state court filing requirements until the removal was approved by the federal court or run the risk of being in default in the state proceedings if removal were refused by the federal court. The leading case discussing this change in the law is *Hopson* v. *North American Ins. Co.*, 71 Idaho 461, 233 P.2d 799 (1951). *See also Allen* v. *Hatchett*, 91 Ga. App. 571, 86 S.E.2d 662 (1955). The enactment of § 1446(e) made it clear that removal was effected by the removing party's compliance with the statute, and no federal court order was required to effect removal. The party seeking to remove has it in his or her power to deprive the state court of jurisdiction merely by compliance with the provisions of § 1446(e). While there is no longer a need to comply with state court filing deadlines to avoid default if the case is removed to the federal court, it is clear that removal is not effected unless the removal documents are filed promptly with the state court.

■■ In each of the cases cited by Allstate on this point, removal was effected by a proper filing in the federal and state court, but the case was remanded because the federal court found that it lacked jurisdiction. They hold that the time period in which responsive pleadings are due in the state court is tolled from the time the removal petition is filed until the case is remanded to the state court. The *Allen* and *Hopson* cases, cited above, are typical of such holdings. Another case cited by Allstate is a reported trial court decision, *Edward Hansen, Inc.* v. *Kearny Post Office Associates*, 166 N.J. Super. 161, 399 A.2d 319 (1979), in which the question was whether, after remand of a properly removed case, the state court could permit the pleadings previously filed in the federal court to stand in the subsequent state court proceedings. Citing *Ayres* v. *Wiswall*, 112 U.S. 187 (1884), the judge noted that, "[f]ollowing a remand the effect to be given to pleadings filed in the federal court is a matter of state policy and is not subject to federal determination." 166 N.J. Super. at 165, 99 A.2d at 321. He then held he could accept the federal court pleadings as it would not prejudice the parties and would save duplication of effort.

As noted above, the case before us is not like the New Jersey case or the others cited because here no removal had been effected. We therefore cannot say that the filing deadline in the circuit court was tolled. We agree with the New Jersey judge that the question presented is one of state policy. We are certainly not required by federal law to give the answer filed in federal court the effect of meeting the filing deadline required by our rule, so we look to our own policy.

In the *Hansen* case, the New Jersey judge cited our decision in *Trinity Universal Ins. Co.* v. *Robinson*, 227 Ark. 482, 299 S.W.2d 833 (1957), where we dealt with a case which had been removed and then remanded and the parties had agreed that an answer filed in the federal court would be treated as if it had been filed in the state court. Our holding was that other answers, as to which no such agreement had been reached, would not be so treated. Apparently no filing deadline question was involved. While that decision may be somewhat instructive of our policy, it does not solve the problem with which we are faced here.

■ This court has always held that default judgments are

not the law's favorites. *See, e.g., Burns* v. *Shamrock Club*, 271 Ark. 572, 609 S.W.2d 55 (1980). Perhaps our most recent important default judgment decision is *Tapp* v. *Fowler*, 291 Ark. 309, 724 S.W.2d 176 (1987), in which we held failure to file an answer within ten days of a ruling denying motions for dismissal and summary judgment did not place a party in default despite the requirement of Ark. R. Civ. P. 12(a). We said, citing *Cammack* v. *Chalmers*, 284 Ark. 161, 680 S.W.2d 689 (1984), that there had been no failure to appear in the action, and we would not place form over substance. The case before us is similar to those in the sense that it was shown that Mr. Bourland's counsel had knowledge of the answer filed in the federal court. There, however, the similarity ends. Allstate filed nothing in the state court within the allotted 30 days. Although it had appeared and defended in the federal court, it had not done so in the state court.

We have been strict in our interpretation of Rule 55 where there has been a failure to make any sort of timely filing or appearance in the trial court. In *Webb* v. *Lambert*, 295 Ark. 438, 748 S.W.2d 658 (1988), we held that a default judgment was required where the answer was filed after the time limit had run, even though the plaintiff had received a copy of the answer before the time ran out. We noted that the rule says default judgment "shall" be entered in that instance. *See also DeClerck* v. *Tribble*, 276 Ark. 316, 637 S.W.2d 526 (1982). We see no difference between that strict policy and the policy which should be applied in the case of failure to file removal documents within the time allowed for answer or otherwise "promptly." The trial court, like the plaintiff, is entitled to be informed of the status of litigation before it, or not before it as the case may be. It is not asking too much to require litigants or counsel to see to it that if the state court is to be deprived of jurisdiction the very instrument by which that is to be accomplished is filed there.

### 2. Excusable neglect, unavoidable casualty, or other just cause

The circuit court denied Allstate's motion to set the default judgment aside for excusable neglect or unavoidable casualty as permitted by Rule 55(c). Allstate cites *Winters* v. *Lewis*, 260 Ark. 563, 542 S.W.2d 746 (1973), for the proposition that the motion should have been granted because there was reason for

counsel to believe that there had been compliance with the filing requirement. In that case, an answer was filed, but then a second, amended, complaint was filed and served on the defendant's counsel. It was shown that the original answer was not stricken, the plaintiff waited some three months to take the default judgment, and defendant's counsel had some reason to believe that the second service was of a copy of the complaint which had already been answered. These facts might have constituted excusable neglect, but we did not say so. We held rather that there was "substantial compliance" with the filing requirement and that the delay resulted in waiver of the filing requirement. We cannot say either of those things here.

Also cited is *Perry* v. *Bale Chevrolet Co.*, 263 Ark. 552, 566 S.W.2d 150 (1978). There the defendant's uncontroverted affidavit stated he had been assured by the plaintiff that the case against him would be dismissed before the time for answer ran. Upon learning that the case was not to be dismissed, the defendant drafted a handwritten answer which he attempted to file the day before the time ran out. His attempted filing was rejected due to a local court rule requiring that pleadings be typewritten. He filed a typewritten answer one day late. We held there was "excusable neglect or other just cause." We find this case distinguishable, because there had been timely personal contact with the court clerk in an attempt to file the answer. In *DeClerck* v. *Tribble, supra,* which is more like the case before us now, we held that it was not excusable neglect for counsel to place the blame on a secretary who allegedly covered with other papers an answer which was ready to be filed and waiting on the lawyer's desk. As in this case, nothing was filed with the trial court within the prescribed time limit. While there is nothing wrong with using the mail to send a pleading to the court, our rules do not permit filing by placing a pleading in the mail.

We cannot say the trial court erred in refusing to set aside the default judgment.

### 3. Attorney fee and penalty

A plaintiff must recover the exact amount claimed against an insurance company to be able to take advantage of Ark. Code Ann. § 23-79-208 (1987) which allows recovery of an attorney fee and penalty. *Cato* v. *Arkansas Municipal League Municipal*

*Health Benefit Fund*, 285 Ark. 419, 688 S.W.2d 720 (1985); *Farm Bureau Ins. Co.* v. *Paladino*, 264 Ark. 311, 571 S.W.2d 86 (1978). In his complaint, Mr. Bourland alleged Allstate was liable under its policy number 015-446-992 with expiration date of May 19, 1987, for $25,000 for wrongful death, $4,190.35 medical bills, and $6,500 for the loss of the reasonable value of the automobile. The total thus sought, absent the attorney fee, interest, and penalty, was $35,690.35. The court awarded $34,953.85.

Mr. Bourland argues that after he learned of the insurance policy's provisions, he sent a demand letter to Allstate seeking precisely the amount which was ultimately awarded by the court, but that he refused to amend his complaint to state that amount as he feared it might somehow alter his prevailing position on the issue of default.

■ We agree with Allstate's argument; Mr. Bourland cannot have it both ways. As he sought from the court more damages than he was awarded, he is not entitled to the penalty.

Affirmed on appeal and affirmed on cross-appeal.

PURTLE and HAYS, JJ., dissent.

JOHN I. PURTLE, Justice, dissenting. I disagree with the majority on the appeal and cross-appeal. If we affirm on appeal we should reverse on cross-appeal because the amount awarded was exactly the same amount the appellee offered to take prior to trial.

It is undisputed that the appellant filed a timely removal action and gave actual notice to the appellee's attorney. The appellant furnished adequate proof that it promptly mailed the removal papers to the state court. Not one person has been misled by the failure to file the removal papers in the state court. In truth, the facts support the theory that the state court failed to properly file the removal papers as strongly as they do the theory that the appellant's lawyer failed to mail them. A logical conclusion is that the postal service lost them.

A common sense approach to this problem is to allow the time the case is pending in federal court to suspend the running of time within which to file in the state court. Upon remand to the

state court time should commence where it left off. If the case had not been remanded, the answer would never have been required to be filed in the state court. Obviously the federal court was looking for an excuse to remand when it discovered that the removal papers had not been filed in the state court. Placing form over substance does not further justice in this case.

In spite of the failure by the appellant to see that the removal papers were placed in the correct file in the state court, we could still grant relief and do justice by applying the "other just cause" provision of ARCP, Rule 55(c). That's exactly what we did in *Tapp* v. *Fowler*, 291 Ark. 309, 724 S.W.2d 176 (1987), where we reaffirmed our holding in *Cammack* v. *Chalmers*, 284 Ark. 161, 680 S.W.2d 689 (1984), allowing a late answer to be filed. We stated: "To hold on the facts before us that the appellant failed to appear or otherwise defend appellee's action would defy common sense, and, at a minimum, place form over substance." We reversed and remanded with directions to set aside the default judgment.

Our procedures allow pleadings to be mailed to the courts, and allows extra time when the mail service is utilized. See ARCP Rule 6(d). A statement by an attorney that he has correctly addressed and mailed a pleading with proper postage is evidence that he has complied with this rule. Attorneys are not insurers or guarantors of delivery of the United States mail. Sometimes we strain at a gnat and swallow a camel. The court just did.

I would have the default judgment vacated and order the case tried on its merits.

STEELE HAYS, Justice, dissenting. In this case, a copy of the answer filed with the District Court was sent to the opposing counsel within the time allowed by Rule 12. The copy sent to the attorney met the requirements for proper service under ARCP 5. There is absolutely no dispute that this pleading was received, and that opposing counsel had notice of the filing as well as the contents of the pleading. For this reason I cannot agree with the conclusion reached by the majority.

While the language of Rule 12 states that the answer is to be filed rather than served, that is not dispositive of the issue. The Reporter's Notes to Rule 12 state, with regard to that point:

> 5. Rule 12 substitutes the word "file" for serve and requires that the responsive pleading be filed within the time prescribed by this rule as opposed to serving the pleadings as is the case under FRCP 12. By using this *terminology*, it is believed that arguments can be avoided as to when a pleading was served. (My emphasis).

The language in the Notes, referring to the use of filing over service as a choice of "terminology," plainly suggests that the filing of the answer is not a requirement, but rather, merely the determinative factor when the issue of timeliness of service arises. Furthermore, there is nothing in this comment that suggests that an answer that is served in a timely fashion will not fulfill the requirements of the rule if the filing is out of time.

Rule 12 was altered from the form used in the Federal Rules, not for an innate preference for filing as opposed to service, but for the purpose of avoiding disputes when the issue of timeliness over service arose. When there is no dispute as to the date of service of the answer, there is no need to resort to the date of filing to make a determination as to the timeliness of the pleading. When actual notice by way of service is given to a party and there is absolutely no dispute as to the timeliness of that service, common sense directs that the filing provision of Rule 12 should prevail.

We have repeatedly held that default judgments are not favored by the courts and should be avoided when possible. *Tapp v. Fowler*, 291 Ark. 309, 724 S.W.2d 176 (1987); *Cammack v. Chalmers*, 284 Ark. 161, 680 S.W.2d 689 (1984); *A.O. Smith Harvester Products, Inc. v. Burnside*, 282 Ark. 27, 665 S.W.2d 288 (1984); *Winters v. Lewis*, 260 Ark. 563, 542 S.W.2d 746 (1976); *Perry v. Bale Chevrolet Co.*, 263 Ark. 552, 566 S.W.2d 150 (1978). We have further found that substantial compliance by a defendant is sufficient to avoid the harshness of a default judgment in several instances. *Winters v. Lewis, supra; Perry v. Bale Chevrolet, supra; Cummings v. Lord's Art Galleries*, 227 Ark. 972, 302 S.W.2d 792 (1957); *Easley v. Inglis*, 233 Ark. 589, 346 S.W.2d 206 (1961). While the language of "substantial compliance" was not used specifically, that was essentially our holding in two more recent cases, *Tapp v. Fowler, supra* and *Cammack v. Chalmers, supra*. Substantial compliance has been our way of defining a situation where we found that the rules had

been complied with sufficiently to satisfy the rule and its purpose, and where a different holding would lead to obvious injustice.

I have no difficulty in concluding that the timely service of the answer in this case was substantial compliance with Rule 12. Given the circumstances of this case and the comments explaining Rule 12, it is clear that the rule and its purpose have been satisfied. As we stated in *Tapp* v. *Fowler, supra*, in reversing a default judgment that had been granted on technically correct, but unsupportable grounds, "To hold [otherwise] would defy common sense, and, at a minimum, place form over substance."