No. 2925.

NAT BROOKS *v.* THE STATE.

1. PRACTICE.—CONTINUANCE is properly refused when, as in this case, the application therefor discloses not only a total want of diligence to procure the absent testimony, but that the testimony, if present, would be inadmissible.

2 THEFT.—The proof shows that the accused borrowed a horse from the owner in the Indian Territory and rode it into Cooke county, Texas, where, without the consent of the owner, and with the fraudulent intent to convert and appropriate the said property to his own use, he sold it. *Held*, that such facts constitute the crime of theft as defined by the act of March 8, 1887. (Willson's Crim. Stat., art. 742a.)

3. SAME—PRACTICE—CHARGE OF THE COURT—INTENT.—Special charges are properly refused when the general charge correctly embodies all the law of the case. Upon the question of intent the trial court, in this case, sufficiently charged the jury that the fraudulent intent must have existed in the mind of the defendant at the time he sold the horse; and

it did not err in refusing to give a similar instruction asked by the defendant.

4. SAME—EVIDENCE.—The defense proposed to prove that the defendant, at his first meeting with the owner of the property after the alleged theft, proposed to pay him for the same. It was also proposed to prove the conversation which then ensued between the defendant and the owner, which conversation is not set out in the bill of exceptions. *Held*, that the said proof was properly excluded as being no part of the res gestæ nor relevant to any issue in the case, and as not coming within the rule which qualifies as evidence a defendant's explanation of his possession of stolen property.

APPEAL from the District Court of Cooke. Tried below before the Hon. F. E. Piner.

The appellant in this case was convicted under the act of March 8, 1887, for the theft of a horse. The penalty assessed against him was a term of five years in the penitentiary.

J. M. Walker was the first witness for the State. He testified that, in January, 1888, he lived in the Indian Territory, about five miles distant from the town of Burneyville, Chickasaw nation. The defendant lived in another house on the same plantation, but a short distance from the witness's house. Witness and defendant were "croppers" on that plantation, but each had separate crops, and neither had an interest in the crop of the other. On the morning of Wednesday, January 25, 1888, the defendant came to the house of witness, and asked witness to take him to the town of Marietta, where he intended to take the train to go to Gainesville, Texas, to get a wagon and horse, the former of which belonged to Jenkins, the brother-in-law of witness, and which the defendant took to and left in Gainesville some time before. Witness told defendant that he did not have time to take him to Marietta, and asked him if it was not cheaper to go to Gainesville on horseback, offering at the same time to lend him a horse if he would bring it back not later than the next day. Defendant replied that he would gladly and gratefully accept the loan of the horse, and would positively return him to the witness on the next day. Witness thereupon put his bridle on his horse and delivered him, without a saddle, to the defendant. The witness next saw his horse on the following Saturday, when he received him, in Gainesville, Texas, from the hands of H. P. Ware, sheriff of Cooke county, Texas. The witness loaned the said horse to the defendant for the one purpose of going to Gainesville and bringing back Jenkins's

wagon, and upon the positive agreement that he was to be returned to him on the next day. The defendant did not have the consent or authority of the witness to sell or otherwise dispose of said horse, nor to convert him to his own use. Defendant never, at any time prior to his arrest, offered to pay witness for the horse.

Cross examined, the witness stated that his proper name was J. M. Walker, as alleged in the indictment, and that he had never claimed nor been known by any other name. He formed the acquaintance of the defendant in Shackelford county, Texas, about three years prior to this prosecution. They then lived within two miles of each other, but did not become well acquainted in Shackelford county. They emigrated from that county to the Indian Territory about the same time. Witness met the defendant and his wife in Gainesville, in the fall of 1887. They were then on their way to the Indian Territory to find a location. From Gainesville the witness went with them in their wagon to the Chickasaw nation, and since that time had become well acquainted with them, and maintained intimate friendly relations with defendant until this horse transaction took place. Defendant and his wife stayed at the house of witness's brother-in-law, Jenkins, for a short time after they reached the nation. At that time the witness was living with his said brother-in-law. Witness occasionally visited the house of defendant after he left Jenkins, and defendant often visited the witness. The horse described by the witness and mentioned in the indictment was a horse witness got from the defendant about two weeks before this offense. He gave the defendant another horse and a hog for that horse. The witness was at Vallandigham's party on the Monday night before he lent his said horse to the defendant, but did not, as he was leaving that party, tell the defendant, in the presence of Mrs. Brooks nor anybody else, to sell the said horse. He never at any time or place authorized the defendant to sell the horse. Witness did not see the defendant after lending him the horse until after his arrest, consequently defendant never had an opportunity prior to his arrest to inform him of the sale of the horse nor to offer to pay for him. Witness did not search for defendant nor wait for an explanation from him after finding out that he had sold the horse, but filed a complaint against him at once.

H. P. Ware, sheriff of Cooke county, Texas, testified, for the

State, that he knew the State's witnesses J. M. Walker and W. A. Fullingim. On the first Tuesday after the last Saturday in January, 1888, the witness delivered to the said J. M. Walker a certain gray horse which the said Walker claimed as his property, and which the said W. A. Fullingim delivered to witness on the said Saturday before the said Tuesday.

W. A. Fullingim testified, for the State, that late in the last week in January, 1888, he bought a certain gray horse, saddle and bridle from the defendant. That transaction occurred at the northeast corner of the public square in Gainesville, Cooke county, Texas. Witness paid the defendant thirty-four dollars in cash for the horse, bridle and saddle, and the defendant sold the same to him as his individual property, claiming to have owned the horse since the previous fall. Within an hour and a half after that transaction J. M. Walker appeared and claimed the horse, and witness delivered the animal to Sheriff Ware. Witness, on the next day, assisted the officers in the arrest of the defendant, near his home, about five miles from Burneyville, in the Indian Territory. Defendant fled from his house when he saw witness and Deputy Sheriff Tom Davis, and attempted to secrete himself in some weeds near his house. Defendant sold the horse to the witness in the day time. Mr. Smith drew up the bill of sale, and defendant signed by making his mark.

J. O. Turner testified, for the State, that he lived in Gainesville. He knew the defendant, and knew the horse the latter sold to Fullingim on the last Saturday in January, 1888. The defendant offered several times, during the two or three days preceding his sale to Fullingim, to sell the said horse to the witness, and always offered the horse as his own property. Defendant kept that horse openly, and openly offered him for sale. Witness had previously bought two horses from defendant—one in January, 1888, and one in the fall of 1887—and he knew of several other horse trades made by the defendant.

D. Phillips testified, for the State, that he lived in the Chickasaw Nation, about half a mile from the house of the witness Walker. He knew Walker, defendant and the horse involved in this prosecution. Defendant passed the witness's house, en route to Gainesville, on or about the day in January alleged in the indictment. He was riding Walker's said horse, and told witness that Walker had loaned him the horse to go to Gainesville after a wagon he had left there. That horse was an

animal which the defendant, about two weeks before that time, traded to Walker for another horse and a hog. Up to the institution of this prosecution, the defendant and Walker visited each other frequently, and were apparently upon terms of friendly intimacy. Witness knew of the defendant gambling with Indians in the Territory, but never heard his personal honesty called in question prior to this horse transaction.

The State rested.

Mrs. Mattie Brooks, the wife of the defendant, testified in his behalf that, on the Monday night before defendant rode Walker's horse to Gainesville, she and defendant attended a party at Vallandigham's house, where, among others, they met the State's witness, J. M. Walker. On the way home, after the party broke up, Walker told the defendant that he could have the horse on Wednesday to go to Gainesville, and directed him to sell the said horse in Gainesville if he could get thirty dollars for him. The arrest of her husband so shocked and prostrated the witness and involved her in so much trouble that the facts to which she now testified escaped her memory, and have recurred to her only since her arrival in Gainesville to attend this trial. She was absolutely positive of the facts to which she has testified. K. Conley was within a few feet of Walker, defendant and witness on the night in question, when Walker authorized the defendant to sell the horse in Gainesville for thirty dollars. Other parties were in the crowd, but not so near Walker and defendant as Conley.

K. Conley was introduced by the defense, but testified that, although he left Vallandigham's party with Walker and defendant and his wife, he did not hear Walker tell defendant, in terms or substance, to sell his horse. Previous to the horse transaction, Walker and defendant were intimate friends.

The defense closing, the State recalled J. M. Walker, who testified in rebuttal that he did not, on the night of Vallandigham's party, on the road home or elsewhere, tell the defendant to sell his horse. He did not leave the said party with defendant and his wife.

D. Phillips, recalled by the State, testified in rebuttal, that Mrs. Brooks, since the arrest of the defendant, had spent most of her time at his house, she being without relatives or friends in the neighborhood. She often, after the arrest of defendant, told witness that she knew of no authority or right her husband had to sell Walker's horse, and that she knew nothing

whatever about the case. A few days before she came to Gainesville to attend this trial, she stated to witness, at his house, that she knew nothing that would benefit her husband, and did not want to attend the trial, and that she was inclined not to do so. Witness advised her to attend the trial. Mrs. Brooks, who was a most estimable lady, has had no near friend to advise with since the arrest of her husband.

*H. L. Stuart*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. This conviction is under the act of March 8, 1887, which reads: "Any person having possession of personal property of another by virtue of a contract of hiring or borrowing, or other bailment, who shall, without the consent of the owner, fraudulently convert such property to his own use, with intent to deprive the owner of the value of the same, shall be guilty of theft, and shall be punished as prescribed in the Penal Code for the theft of like property." (Willson's Cr. Stat., sec. 1292.)

I. We perceive no error in the action of the court refusing defendant's application for a continuance. It fails to show proper diligence to obtain the testimony of the absent witness, or sufficient excuse for such failure. Furthermore, the testimony of said witness, as stated in said application, would not be admissible in behalf of defendant, the same being as to defendant's declarations with respect to his authority to sell the horse, and not within the rule of testimony explanatory of possession of recently stolen property, nor within the rule of res gestæ, but being self serving declarations merely.

II. It was proved by the State that the defendant borrowed the horse in question from Walker, the owner, in the Indian Territory, and rode said horse into Cooke county, Texas, where he sold him as his own property, and without the consent of the owner. These facts, coupled with a fraudulent intent to convert and appropriate said property to his own use, constitute the offense denounced by the statute and charged in the indictment. (Taylor v. The State, 25 Texas Ct. App., 96.) With respect to the fraudulent intent essential to constitute the offense, there is sufficient evidence to warrant the conviction, and the charge of the court fully, clearly and correctly sub-

mitted that issue, and the law applicable thereto, to the jury, instructing that such fraudulent intent must have existed in the mind of the defendant at the time he sold the horse.   It was not error, therefore, to refuse the special instruction requested by the defendant.

III.  . Defendant offered to prove by Walker, the owner of the horse, that, the first time he saw said Walker after having sold said horse, he offered to pay said Walker for said horse, and to prove also by said Walker the conversation then had between them; the bill of exception, however, fails to show the purport of such conversation.   This proposed testimony was rejected, and in this ruling we do not think the court erred.   Said testimony is not within the rule which renders competent the explanation of the defendant of his possession of recently stolen property.   His lawful possession of the horse was not questioned.   It was the fraudulent conversion of the property that was in issue, and the acts and declarations of the defendant, not res gestæ, but occurring long subsequent to the conversion, were not competent evidence in his behalf.

We have found no material error for which the conviction should be set aside, and the judgment is affirmed.

*Affirmed.*

Opinion delivered October 20, 1888.