ARKANSAS BOND COMPANY *v.* HARTON.

4-4046

Opinion delivered November 11, 1935.

666

*W. K. Ruddell,* for appellant.
*Roy Richardson,* for appellee.

BUTLER, J. Appellant filed a pleading in the Stone Circuit Court, styled ''complaint,'' by which it sought to procure a writ of mandamus to require the appellee, the clerk of the county court, to issue certain warrants. During the course of the proceedings, appellee, as a taxpayer, filed an intervention praying judgment against the appellant for $750 theretofore paid it out of the county treasurer. She also, as clerk of the county court, interposed a demurrer to the complaint filed against her as such. The demurrer was sustained, appellant's complaint dismissed, and a judgment by default rendered in favor of the county against the appellant on the taxpayer's intervention. From these orders and judgments appellant has prosecuted an appeal to this court.

We set out the substance of the complaint to the effect that appellant entered into a contract with the county judge of Stone County to refund the bonds of that county in the amount of $53,500, and, as a fee for his services, he was to receive a sum equal to five per cent. of the face of the bonds. Appellant is a corporation organized and doing business under the laws of Arkansas, and has fully complied with its part of the contract by having printed and delivered the said refunding bonds to the holders of the old bonds. The contract with the county judge was made exhibit A to the complaint. There was the further allegation that on the 19th day of December, 1934, the county court made an order allowing the claim of the appellant for the sum of $1,275, balance due it under the aforesaid contract, and directing the appellee, as county clerk, to draw certain warrants in favor of the appellant payable out of the ''bond fund'' and deliver the same to it. A copy of said order is attached to the complaint as exhibit C. There was also an allega-

tion that on December 27, 1934, the county court made and entered an order of record directing the county "treasurer" to issue "her check or draft" in the sum of $650 to the appellant to be paid out of the "bond fund" when collected by the collector of revenues. This order was made an exhibit to the complaint, but does not appear to be involved in the proceeding against the county clerk. It was alleged that demand had been made upon the county clerk to issue the said warrant and that she had refused to do so. The prayer was for a writ of mandamus to issue directing the county clerk to comply with the orders of the court.

In testing the sufficiency of a complaint on general demurrer, the court indulges every reasonable intendment in its favor, and if the facts stated, together with every reasonable inference arising therefrom, constitute a cause of action, the demurrer should be overruled. *Ellis* v. *First National Bank,* 163 Ark. 471, 260 S. W. 714; *Sharp* v. *Drainage District,* 164 Ark. 164, 251 S. W. 923; *Driesbach* v. *Beckham,* 187 Ark. 816, 12 S. W. (2d) 408. And incomplete, ambiguous, and defective averments should be reached by motion to make more definite and certain. *Fitch* v. *Walls,* 169 Ark. 745, 276 S. W. 578. When tested by these rules, we think the complaint, with the exhibits, sufficiently pleaded a judgment of allowance of appellant's claim by the county court and the order based thereon to the county clerk to issue the warrants and the clerk's refusal to obey said judgment and orders.

County courts, within the sphere of the jurisdiction conferred on them by the Constitution, are superior courts of record and have exclusive original jurisdiction in all matters relating to the fiscal affairs of their respective counties, including claims against the said counties. Section 28, art. 7, Constitution; *Pierce* v. *Edington,* 38 Ark. 150; *Williams* v. *State,* 64 Ark. 159, 46 S. W. 186; *Saline County* v. *Kinkead,* 84 Ark. 329, 105 S. W. 581; *Leathem* v. *Jackson County,* 122 Ark. 114, 182 S. W. 570; *Stumpff* v. *Louann Provision Co.,* 173 Ark. 192, 292 S. W. 106. The county court had jurisdiction to pass on the claim of the appellant, and to make the necessary orders

for its payment when allowed. The question presented by the demurrer raises a collateral attack on the judgment and orders of the county court. These judgments and orders, when collaterally attacked, must be presumed to be regular and correct. *Clay* v. *Bilby*, 72 Ark. 101, 78 S. W. 749; *Kulbreath* v. *Drew County Timber Co.*, 125 Ark. 291, 188 S. W. 810.

As we must presume the court properly allowed the claim, the only question we can consider in this proceeding is the order directing the clerk to issue the warrants payable out of the "bond fund." The record made in the trial court and presented to us is unsatisfactory and sheds but little light upon the question to be considered. We are not advised whether refunding the bonds effected a saving to the county, whether the benefit to be derived was merely an extension of maturities of the debts first funded, or whether both purposes were served. The authority of a county to refund its bonds within certain limitations was upheld in the case of *Talkington* v. *Turnbow*, 190 Ark. 1138, 83 S. W. (2d) 71. This authority necessarily implies the power of the county court to provide and pay for the necessary expense incurred in refunding bonds. As the order allowing appellant its fee has not been appealed, for the purposes of this case the propriety of the fee as a part of the necessary expense is *res judicata*. The question then is, how shall that fee be paid, whether from the bonding fund or from the general revenues of the county?

The appellant construes a sentence contained in § 1 of act No. 102, Acts of 1935, as authority for direction to the clerk to draw the warrants on the bond fund. The sentence is: "Such refunding bonds shall not be issued in a greater amount than the face value of the bonds and matured interest outstanding of such county then being refunded, with interest to the date of such new bonds, plus expenses, payable out of the bond fund account, incurred in connection with the issuance of the new bonds, and any such new bond shall not be delivered except upon the surrender and cancellation of a like amount of the indebtedness being refunded, and in no event shall any

such refunding bond bear a greater rate of interest than that borne by the bond for which it is exchanged.'' As will be observed, the sentence is long and involved, the phrases disconnected, and the punctuation serves rather to obscure than to clarify the legislative intent. It can hardly be construed to mean that the refunding bonds may be issued in an amount equal to the matured face value of the funded debt with interest to which shall be added the expense of refunding; for, giving it this construction, it might serve to increase the county's bonded indebtedness. Neither could the language, ''plus expenses, payable out of the bond fund account,'' be construed to mean that the expenses of refunding should be paid from the fund created by taxation for the purpose of paying the bonded indebtedness where to do so would increase the sum total of the indebtedness to be discharged by that taxation. The reason is that this would divert the revenues to a purpose not within the meaning of the constitutional provision authorizing the levying of the tax and, to the extent the indebtedness was increased, would impair the obligations of the contract existing between the bondholders and the county.

It may be gathered from the language of the entire act, considering the purposes sought to be effected, that the Legislature indulged the presumption that a refund of the county's bonded indebtedness might effect a saving to the county by obtaining a lower interest rate on the new bonds than on the old, and that, out of such saving, the expense of reissue might be paid out of the bond fund without the impairment of existing contracts or departing from the spirit of Amendment No. 10, which dedicates the fund arising from the taxation authorized to the payment of the indebtedness represented by the bonds. Where a saving is effected in any manner, whether by securing a lower interest rate or otherwise, the payment of the expense of securing the refund would be an effectual application of such as a payment *pro tanto* of the indebtedness, and, as thus construed, will not offend against any of the provisions of Amendment No. 10. When tested by demurrer, we must assume there was the

basis indicated for the order that the warrants be drawn payable out of the bond fund.

Omitting the formal parts, the intervention is as follows: "Mrs. Frances Harton, by leave of court, intervenes herein and says: That she is a taxpayer in Stone County; that the plaintiff has been paid seven hundred and fifty dollars; that said amount was paid without any warrant for the same being issued; also, that it was paid out of the bond fund of the county, which fund was pledged for the payment of the bonds described in the complaint; that said amount was paid contrary to law, and the plaintiff should be required to refund said seven hundred and fifty dollars to Stone County."

Appellant complains that the judgment by default was rendered without summons having been issued on the intervention or served on it, and it had no notice that the intervention had been filed. This would be of no avail to the appellant. An intervention is not an independent proceeding where it is against the plaintiff in the original action, but is ancillary and supplemental to the main case. In a suit where there is an intervention, the original parties are already in the court and must take notice of all subsequent proceedings relating to the subject-matter, including intervening petitions. *Board of Directors, etc.,* v. *Raney,* 190 Ark. 75, 76 S. W. (2d) 311. The intervention here, however, alleges no facts upon which the judgment could be grounded. There is no allegation that appellant was not justly due the said $750 paid it or any facts alleged tending to show that such payment was fraudulently made. The allegation, "said amount was paid contrary to law," is merely the pleader's conclusion without the statement of any fact properly leading to that conclusion apart from the pleader's deduction. The pleading of a mere conclusion fails to state a cause of action, and a judgment by default based upon such a complaint is void. *Brodie* v. *Skelton,* 11 Ark. 120; *Thompson* v. *Hickman,* 164 Ark. 469, 262 S. W. 20; *Wilson* v. *Overturf,* 157 Ark. 385, 248 S. W. 898.

It follows from the views expressed that the judgment sustaining the demurrer and the default judgment

is reversed, and the cause remanded, with directions to overrule the demurrer and to set aside the default judgment to the suit, and for such further proceedings as the parties may be advised.