## ARKANSAS ELECTRIC COMPANY *v.* CONE-HUDDLESTON, INC. ET AL

5-5321 458 S. W. 2d 728

Opinion delivered October 19, 1970

Rose, Barron, Nash, Williamson, Carroll & Clay, for appellant.

Wright, Lindsey & Jennings, for appellants.

LYLE BROWN, Justice. Arkansas Electric Company sued the three appellees, Weir Brothers Electric, Inc., Cone-Huddleston, Inc., and Commercial Union Insurance Company of New York. Cone-Huddleston was the prime contractor on a construction project for the Lonoke United Methodist Church. Commercial National furnished the performance bond for the prime contractor. Weir Brothers was the sub-contractor for the installation of electrical supplies. The suit brought by Arkansas Electric was for electrical supplies ordered by Weir Brothers. Arkansas Electric obtained judgment for the full amount claimed as against Weir Brothers; but as to the other two appellees a small credit was allowed for materials which the court determined did not go into the job. Prior to the final judgment after trial there was a default judgment for the full amount entered against Commercial Union, along with statutory penalty and attorney's fee. The setting aside of that judgment is one of the issues raised by Arkansas Electric on appeal. The other two points for reveral concern the allowance (as to the prime contractor and its surety) of two credits totaling $21.62, the result of which was to defeat appellant's claim for penalty and attorney's fee.

First, the default judgment. Commercial Union was served the second day after the suit was filed; and Cone-Huddleston was served twelve days later. Commercial timely requested its insured, Cone-Huddleston, to file an answer in the former's behalf and to defend, as it was contractually obligated to do. Of course the defenses would be identical and Commercial Union's liability would be predicated on Cone-Huddleston being liable. Cone-Huddleston was agreeable to Commercial

Union's request and filed a joint answer; however, the answer was out of time insofar as Commercial Union was concerned. That was because of the twelve day differential in service heretofore mentioned, of which Cone-Huddleston was not aware. In other words, Cone Huddleston calculated the time to answer on the basis of service upon it rather than using the date Commercial Union was served.

The court concluded that Commercial National in good faith had been led to believe an answer would be timely filed in its behalf by Cone-Huddleston, which was not done because "Cone-Huddleston erroneously assumed that it had twenty days from November 18 [its date of service] in which to file an answer for itself and Commercial Union." The trial court is authorized by Ark. Stat. Ann. § 29-401 (Repl. 1962) to set aside a default judgment "upon showing of excusable neglect, unavoidable casualty or other just cause." It is an action which addresses itself to the discretion of the court. We are unable to say that the trial court abused its discretion. We are also asked to say whether Cone-Huddleston's answer in its behalf inured to the benefit of Commercial Union. We need not reach that question since we hold that the action of the trial court under § 29-401 was not improper.

Appellant Arkansas Electric next insists that the court erred in admitting certain evidence of credits. This project began in March 1967. All invoices tendered Weir Brothers for materials supplied between March and December 4, 1967, were paid. Arkansas Electric sued for materials invoiced between December 4 and the following March and it is contended by Arkansas Electric that no credits could be claimed for invoices sued upon. Arkansas Electric emphasizes that all those "prior invoices" had been paid.

One of the questioned invoices listed 200 electrical split adapters, costing $29.25. The other invoice was for two electrical circuit covers costing $7.00. They were invoiced respectively in August and November 1967,

designated for the church project, and paid. Cone-Huddleston and Commercial Union persuaded the court to consider those payments as evidence of credits on the theory that the materials did not in fact go into the church job. A consideration of the claimed credits was not improper. The prime contractor and its surety were liable only for materials which went into the church project. If upon audit it could be discerned that the running account contained some charges against the church job that in fact did not go into that project then the prime contractor and the surety were entitled to credit therefor. We see no logical reason why that credit would not carry over to unpaid invoices.

Finally appellant argues that even though we conclude that the evidence of alleged improper charges against the project was admissible, the quantum of that evidence was not sufficient to establish that the disputed items were not used in the project.

With respect to the 200 adapters the evidence showed that they were shipped by Arkansas Electric to the home office of Weir Brothers in Searcy, not to the job site in Lonoke. Weir Brothers' bookkeeper testified that she marked the invoice "stock" which generally indicated that the items went into the stock of parts kept at the office. Charles Weir was called as a witness by Arkansas Electric. It was hoped to establish by him the number of adapters which were installed at Lonoke. Weir worked on the job and was frank to admit that he could not recall just how many were used. He was asked to state—based on his recollection of the job—the maximum number of adapters used. To that question he replied: "Well, from what I remember about the job I'd say somewhere around half of these on the invoices probably were used." He characterized his estimate as an "educated guess." Apparently the trial court considered the estimate more than a guess on Weir's part because the witness was a man of considerable experience in electrical construction and was active on the Lonoke project. Be that as it may the court concluded

that the Lonoke project should be charged with only one-half the adapters.

Then there was the item of the two electrical circuit covers. It appears certain that two covers were shipped which were not sized for the circuits intended to be covered; that Arkansas Electric was notified and made a notation on the invoice to that effect and with a further notation that credit would be given when the covers were returned to Arkansas Electric. There was evidence that they were not returned, and that they could in fact have been used on other circuit boxes on the project. In granting Cone-Huddleston and its surety credit for this $7.00 under evidence which appears conflicting, the court, sitting as a jury, was so convinced that the covers were not used that he remarked, "I know of no other interpretation that I could possibly place on the testimony that I have heard."

Concededly there were testimony and circumstances which made the allowances close questions of fact, which is not unusual in litigation. A sifting of the evidence reveals good argument for contradictions on both sides of the issues. Yet that situation of itself does not warrant us in disturbing a finding of fact. *Lumbermens Mutual Ins. Co. v. Cooper*, 245 Ark. 81, 431 S. W. 2d 256 (1968). We utilize the substantial evidence test and consider the evidence in the light most favorable to the jury findings (or the findings of the court sitting as a jury); and we draw all inferences that may reasonably be so drawn, in favor of those findings. *Spangler v. Comer Lumber & Supply Co.*, 246 Ark. 764, 439 S. W. 2d 792 (1969).

If the trial court was correct in allowing either one of the two credits then we would not be warranted in reversing the case. We are unable to say that neither of the two rulings was supported by substantial evidence.

Affirmed.