KOHLENBERGER, Inc., A Corporation *v.*
TYSON'S FOODS, Inc.

73-219                                            510 S.W. 2d 555

Opinion delivered May 20, 1974
[Rehearing denied July 15, 1974.]

*Eichenbaum, Scott, Miller, Crockett & Bryant,* by: *C. Richard Crockett,* for appellant.

*Crouch, Blair, Cypert & Waters,* by: *James F. Dickson,* for appellee.

JOHN A. FOGLEMAN, Justice. This appeal involves a default judgment granted Tyson Foods, Inc. in its suit

against Kohlenberger, Inc. to recover damages allegedly resulting from operational failures of a "KR 60-A Krakice Maker" purchased by Tyson from Kohlenberger. Kohlenberger relies upon the following points for reversal:

I. The court erred in refusing to set aside the default judgment awarded appellee.

II. The court erred in awarding judgment to appellee because the complaint does not state a cause of action.

III. The court erred in awarding more than nominal damages to plaintiff-appellee.

We will first discuss point I and then treat points II and III together.

## I.

Appellant is a foreign corporation, not authorized to do business in Arkansas. Its principal place of business is in Fullerton, California. The complaint was filed on November 8, 1972. Service was had under the "Long Arm Statute," Ark. Stat. Ann. § 27-2501—2507 (Supp. 1973) by a letter dated November 11, 1972, from the Sheriff's Department, Washington County, Arkansas, addressed to Mr. Allan A. Morris, President, Kohlenberger, Inc., enclosing a copy of the complaint and a summons. In the letter, sent by certified mail, the sheriff stated that answer would be due 30 days from receipt of the letter. Based upon the postmark on the return receipt, the sheriff's return showed November 16, 1972, as the date of service.

On December 29, 1972, before judgment was entered, Kohlenberger, appearing specially, filed a motion to quash the summons and its service, upon jurisdictional grounds now immaterial. In the judgment entered February 22, 1973, after a hearing on February 8, 1973, the circuit court denied the motion to quash, held that the failure of Kohlenberger to appear or plead within the time allowed by law was not due to excusable neglect, unavoidable casualty or other just cause, and entered judgment against Kohlenberger for $84,-060.86 and costs. Kohlenberger then filed a motion to set aside and vacate the judgment. One of the grounds of this motion relates to the failure to timely appear and plead. In the motion Kohlenberger alleged as excusable neglect, unavoidable casualty, or just cause for its default, that summons

was served on November 16, 1972, and on December 13, 1972, first placed in the hands of its California attorney, who called Tyson's attorney, and requested that a default judgment not be taken. It was also alleged that the California attorney, being under the impression that the time for answer had already expired because the sheriff's letter was dated November 11, 1972, and for "other reasons," took no immediate steps to either file a pleading or apply for an extension of time within which to do so. Kohlenberger relied upon the pleadings and documents, testimony, evidence and statements of counsel at the hearing on February 8, 1973. This motion was denied.

The hearing on February 8 came upon regular call of the docket. Even though no allegation of unavoidable casualty, excusable neglect or other just cause was made in the motion to quash, it seems that the hearing was directed to the propriety of entry of a default judgment. In attempting to meet its burden Kohlenberger showed:

> Robert J. DeMarco, a member of the litigation department of the California firm of Hill, Farrer and Burrell, consisting of 40 attorneys, received the summons which came to his firm's office by mail on December 13, 1972, about 4:30 p.m. in the afternoon. On the next morning he had a telephone conversation with Mr. Dickson, the attorney who had filed the complaint. Dickson declined to give any assurance that a default judgment would not be entered because of acrimony engendered between the parties through controversy about the icemaker. There was no further communication between DeMarco and Dickson until after December 22, 1972, the date on which Kohlenberger employed the Little Rock firm of Eichenbaum, Scott, Miller, Crockett and Bryant. DeMarco was unaware of the date his client had actually received the summons, and of the fact that the return receipt had gone to the sheriff's office rather than to Dickson's office. He had assumed, since the letter was dated November 11, it would have been received by his client on November 13 in the usual course of the mails, and that Dickson had seen the return receipt. The name of the president of Kohlenberger, Inc. was Arval, not Allan, Morris. The company had no record indicating the time of receipt of the summons and complaint and had given DeMarco no explanation why it took nearly a

month to get them to him. DeMarco did not inquire of the Clerk of the Circuit Court of Washington County about the service and it did not occur to him that he might have had a Fayetteville attorney to check to determine whether Kohlenberger was in default or to seek an extension of time within which to plead. On the advice of a member of his firm, DeMarco sought to reach Mr. Charles Eichenbaum on December 14, but, finding that he was out of town and thinking that time was no longer of the essence because Dickson would seek a default judgment, did not talk to Eichenbaum until the following week. Dickson did not misrepresent the facts to DeMarco, but simply accepted DeMarco's statement that Kohlenberger was in default.

After the circuit judge announced that the motion to quash was denied, Kohlenberger requested permission to file an answer on the ground that the failure to plead earlier was due to excusable neglect or other just cause. This permission was denied, but the court permitted Kohlenberger's attorney to dictate its proposed answer into the record.

Appellant admits that there was neglect in this case, but asserts that it was excusable. It relies upon cases wherein we have held that neglect on the part of a defendant's attorney was excusable because of some justification in his belief either that the pleading had been or would be timely filed or that the time for filing had not expired. See *Fitzwater v. Harris*, 231 Ark. 173, 328 S.W.2d 501; *Barkis v. Bell*, 238 Ark. 683, 384 S.W.2d 269; *Easely v. Inglis*, 233 Ark. 589, 346 S.W.2d 206; *Arkansas Electric Co. v. Cone-Huddleston*, 249 Ark. 230, 458 S.W.2d 728. We need not consider whether DeMarco was justified in relying upon his assumptions or whether his failing to endeavor to talk to any of the four other members of Eichenbaum's firm, or to attempt to reach Eichenbaum outside Little Rock, or to attempt to reach any other attorney in Little Rock or Fayetteville or to check with the clerk as to the time for filing answer was excusable neglect. Neither do we consider whether there is a distinction where the neglect is shown to be that of the defendant, rather than of his attorney. Appellant hinges its whole argument on this point upon the premise that because of DeMarco's misunderstanding there was unavoidable casualty, excusable neglect and other just cause for its default. But even if we agreed, we would be unwarranted in holding that the totally unexplained cavalier

treatment of the summons and complaint by the officers and agents of Kohlenberger, which were responsible for the dilemma in which its attorney found himself, was due either to unavoidable casualty, excusable neglect or other just cause. This we would have to do in order to find that the circuit judge erred in denying the motion to quash, granting default judgment or in denying the motion to set the judgment aside. This case is so nearly like *Ryder Truck Rental* v. *Wren Oil Dist. Co.*, 253 Ark. 827, 489 S.W.2d 236, as to be governed by it. We find the suggestion that the judgment should have been set aside merely because Kohlenberger had a meritorious defense totally without merit. If we did follow this suggestion, we would revert to the wholly unsatisfactory conditions prevailing prior to the enactment of Act 49 of 1955. There was no error insofar as this point is concerned.

## II. and III.

We treat these points together, because the arguments, pro and con, seem inextricably intertwined. In support of point II appellant contends that the complaint stated no cause of action because under the allegations of the complaint there was an unrevoked acceptance of the icemaker by Tyson, there having been no allegation of either rejection or revocation of acceptance prior to the filing of the complaint, and no allegations pertaining to cover. Appellant's argument under point III also depends, to some extent, upon the premise that the case is to be treated as if the goods were accepted.

Appellant admits that the complaint alleges notification of breach of warranty. Consequently, appellant argues there was no basis for the recovery of special, incidental or consequential damages prayed for in the complaint. This argument brings us to a consideration, first, of the damages recoverable for a breach of warranty and, then, of the right to recovery of special, incidental and consequential damages in the light of the facts alleged and those not alleged. In passing, however, we must say that appellee's positive, but unsupported, assertion that Kohlenberger's default bars it from raising these questions is without merit. A default admits only those facts alleged in the complaint and if they are insufficient to support the judgment, it will be reversed. *Arkansas Bond Co.* v. *Harton*, 191 Ark. 665, 87 S.W.2d 52; *Wilson* v. *Over-*

*turf,* 157 Ark. 385, 248 S.W. 898; *Thompson* v. *Hickman,* 164 Ark. 469, 262 S.W. 20. Although it is unnecessary that a complaint set out the evidence relied upon or a history of transactions leading up to the essential facts, it is necessary that substantive or issuable facts be alleged, and conclusions stated cannot be considered on default. *Strange* v. *Bodcaw Lbr. Co.,* 79 Ark. 490, 96 S.W. 152, 116 Am. St. Rep. 92; *Arkansas Bond Co.* v. *Harton,* supra; *Wood* v. *Drainage District No. 2,* 110 Ark. 416, 161 S.W. 1057; *Thompson* v. *Hickman,* supra. The facts constituting the cause of action must be averred by stating them, in direct and positive allegations, and not by way of argument, inference or belief. *Wilson* v. *Overturf,* supra. Every fact and element essential to the cause of action must be stated. *Purtle* v. *Wilcox,* 239 Ark. 988, 395 S.W.2d 758; *Wood* v. *Drainage District No. 2,* 110 Ark. 416, 161 S.W. 1057. This means that a complaint must allege every fact which the plaintiff would be required to prove in order to recover. 71 C.J.S. 174, Pleading, § 69; *Crutcher* v. *Wilson,* 277 Ky. 499, 126 S.W.2d 1133 (1939). The facts alleged must show the existence of a right in plaintiff, the infringement of that right by defendant and that the cause of action had accrued at the time of the filing of the complaint. *Crutcher* v. *Wilson,* supra. See also, *Chaffin* v. *McFaddin,* 41 Ark. 42. A judgment by default must strictly conform to, and be supported by, the allegations of the complaint, and a closer correspondence between the pleading and judgment is required than would be after a contested trial. *Kerr* v. *Kerr,* 234 Ark. 607, 353 S.W.2d 350.

Insofar as a breach of warranty is concerned, the buyer may recover the loss resulting in the ordinary course of events from the seller's breach as determined in any manner that is reasonable, the measure of which is the difference at the time and place of acceptance between the value of the goods and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. In a proper case any incidental and consequential damages may be recovered as provided in Ark. Stat. Ann. § 85-2-715 (Add. 1961). See Ark. Stat. Ann. § 85-2-714 (Add. 1961). Incidental damages resulting from breach of warranty are costs of cover and any other reasonable expense incident to the breach. Ark. Stat. Ann. § 85-2-715. Consequential damages are losses resulting from the buyer's general or particular requirements and needs of which the

seller, at the time of contracting had reason to know and which could not be prevented by cover. Ark. Stat. Ann. § 85-2-715. In order to recover the buyer must first attempt to minimize his damages. Committee Comment 2, § 85-2-715. The burden of proving loss by way of consequential damages is expressly upon the buyer. Committee Comment 4, § 85-2-715.

The buyer must pay at the contract rate for goods accepted, but this does not impair any other remedy he may have. Ark. Stat. Ann. § 85-2-607(1) and (2) (Add. 1961). A buyer may accept or reject goods purchased. Ark. Stat. Ann. § 85-2-601 (Add. 1961). Goods are accepted when the buyer fails to make an effective rejection. Ark. Stat. Ann. § 85-2-606 (Add. 1961). To avoid acceptance of wholly non-conforming goods, the buyer must take affirmative action. A rejection is ineffective unless the buyer seasonably notifies the seller. Ark. Stat. Ann. § 85-2-602 (Add. 1961) and Committee Comment. Even though a buyer may revoke an acceptance, the revocation is not effective until the buyer notifies the seller. Ark. Stat. Ann. § 85-2-608 (Add. 1961). More will generally be necessary than mere notification of a breach under Ark. Stat. Ann. § 85-2-607. Committee Comment 5, § 85-2-608. We have held that notification of a breach of warranty is a condition precedent to recovery which must be pleaded. *L. A. Green Seed Co.* v. *Williams*, 246 Ark. 463, 438 S.W.2d 717. Since in order to recover for more than is allowed for breach of warranty where the goods are accepted, a plaintiff buyer must prove that there was an effective rejection or revocation and notification is essential before either is effective, he must plead notification, prior to the filing of suit, of one or the other, as a condition precedent just as required in case of breach of warranty. See *Poole* v. *Marion Buick Co.*, 14 N.C. App. 721, 189 S.E.2d 650 (1972). If more is required than notice of breach of warranty, and notice of breach of warranty is a condition precedent to filing of suit which must be alleged in a complaint, it would be highly illogical to hold that the same rule did not apply where recovery is sought upon the basis of rejection or revocation.

We have held that failure to allege that a properly verified account had been filed in the office of the clerk required reversal of a judgment for enforcement of a materialman's lien. *Chaffin* v. *McFaddin*, 41 Ark. 42. We have

also held that a default judgment could not be sustained because a complaint contained no allegation that a landowner had employed or agreed to pay a laborer for his labor in drilling an oil well even though it was alleged that the owner accepted the benefits of the labor. *Thompson* v. *Hickman*, supra. The allegations of the complaint must be sufficient to warrant the relief prayed for. *Clarke* v. *Strong, Admr.*, 13 Ark. 491.

When we examine the complaint in the light of well-established rules requiring allegations to support a default judgment, we find defects fatal to the relief sought and granted. Tyson sought to allege three causes of action. The first was based upon breach of express warranty, the second on breach of implied warranty of merchantability and the third on breach of implied warranty of fitness. The allegations are sufficient to support relief by way of judgment on these causes of action for damages allowed in the case of accepted goods. There were sufficient allegations of notice of breach of warranty, but none whatever of notice of rejection or revocation. Plaintiff, however, sought to recover, on account of the breach of express and implied warranties, the purchase price paid for the icemaker and an additional sum of $57,873.40 for ice purchased, the cost of dismantling, removing and storing the defective equipment, loss of profits, good will, customers and business. The judgment rendered was for the purchase price of the icemaker and associated equipment "as a result of the failure of the machine to operate as warranted," $48,969.89 as "consequential damages" for ice purchased as a result of breach of warranty and $8,090.97 as "consequential damages" for expenditures for labor to grind and auger the ice purchased.

In the absence of any allegations of any effective rejection or revocation of acceptance, Tyson was not entitled to recover the purchase price. Its damages in this respect were limited to the difference at the time and place of acceptance between the value of the icemaker if it had been as warranted and its actual value. There were no allegations of "special circumstances" which would support a judgment for the full amount of the purchase price. Since the allegations of the complaint did not state a cause of action for this relief, it did not support the judgment rendered, and it must be reversed for this reason, if for no other.

The judgment was based on evidence heard by the court as well as the allegations of the complaint. Even if the evidence supplied the deficiencies, it would not support the judgment. The allegations of a complaint cannot be enlarged by evidence introduced to support a judgment by default. *Kerr* v. *Kerr*, 234 Ark. 607, 353 S.W.2d 350. Although there was no evidence offered to show the true measure of damages in this respect, we find no reason to say that it could not be produced on a retrial, so the case will be remanded. Since there are other questions raised here that will arise on retrial, we will discuss those also.

In order to properly approach answers to these questions, it is necessary that we consider the status of a defaulting defendant insofar as his participation in a hearing on application for default judgment is concerned. The plaintiff, of course, must introduce evidence to support any judgment for damages, in excess of nominal damages. Ark. Stat. Ann. § 27-1151 (Repl. 1962); *Ferri* v. *Braun*, 236 Ark. 329, 366 S.W.2d 286; *Naperski* v. *Trevillion*, 202 Ark. 638, 151 S.W.2d 992; *Earl* v. *Ellison*, 138 Ark. 166, 210 S.W. 342; *Greer* v. *Strozier*, 90 Ark. 158, 118 S.W. 400; *Greer* v. *Newbill*, 89 Ark. 509, 117 S.W. 531. A defaulting defendant not only has the right to contest the element of damages, he may also cross-examine witnesses giving testimony as to damages, introduce evidence in mitigation of damages and question, on appeal, the sufficiency of the evidence to support the amount of damages awarded. *Ferri* v. *Braun*, supra; *Clark* v. *Collins*, 213 Ark. 386, 210 S.W.2d 505.

We indicated in *Clark* v. *Collins*, supra, that a defendant could also offer proof as to an adjustment of the amount claimed. While a defaulting defendant cannot introduce evidence to defeat plaintiff's cause of action or to avoid it, any evidence that would tend to mitigate or minimize the damages or reduce the amount claimed, even to nominal damages, is admissible on behalf of a defaulting defendant. *Mizell* v. *McDonald*, 25 Ark. 38; *Jetton* v. *Smead*, 29 Ark. 372; 25A C.J.S. 135, Damages 172; *St. Louis & S. F. R. Co.* v. *Zumwalt*, 31 Okla. 159, 120 P. 640 (1912); *Turner* v. *Carter & Pulliam*, 1 Head (Tenn.) 520 (1858); *Randolph* v. *Sharpe*, 42 Ala. 265 (1868); *Grace* v. *Curley*, 3 Tenn. App. 1 (1926); *DeHoff* v. *Black*, 206 N.C. 687, 175 S.E. 179 (1934); 1 Black on Judgments, Second Edition, 133, § 91 (1902); *Wileman* v.

*Mayor and Aldermen*, 29 Tenn. App. 172, 195 S.W. 2d 325 (1946); *Garrard* v. *Dollar*, 49 N.C. 175 (1856), 67 Am. Dec. 271; *McClelland* v. *Climax Hosiery Mills*, 252 N.Y. 347, 169 N.E. 605 (1930).

Kohlenberger contends that Tyson was not entitled to recover either incidental or consequential damages because there was no allegation in its complaint as to cover. It is true that a buyer can recover as consequential damages losses resulting from his general or particular requirements and needs only if the seller, at the time of contracting, had reason to know them and which could not reasonably have been prevented by cover or otherwise. Ark. Stat. Ann. § 85-2-715(2). It is also true that the burden of proving the loss is on the buyer, but this does not necessarily mean that he must first prove the negative of the proposition, i.e., that his loss could not have been prevented by cover. A plaintiff is not ordinarily required to plead matters relating to mitigation, minimization or reduction of his damages. 22 Am. Jur. 2d 388, Damages, § 292. See Annot., 41 A.L.R.2d 955. The burden of proof of these matters is usually upon the defendant. *International Correspondence School* v. *Crabtree*, 162 Tenn. 70, 34 S.W.2d 447, 78 A.L.R. 330 (1931). We have held that, upon breach of contract, the burden of establishing his damages is upon the party claiming them, but the burden is upon the defaulting party to show that such damages might and should have been minimized. *City of Paragould* v. *Arkansas Power & Light Co.*, 171 Ark. 86, 284 S.W. 529. We have followed this rule in cases involving wrongful discharge of employees. See, e.g., *Runkle* v. *Fuess*, 226 Ark. 447, 290 S.W.2d 433; *Van Winkle* v. *Satterfield*, 58 Ark. 617, 25 S.W. 1113. The language of *Van Winkle* is particularly appropriate. We said:

> The burden of proof is on the employer to show that the servant might have obtained similar employment, for the failure of the servant to obtain other employment does not affect the right of action, but only goes in reduction of damages, and if nothing else is shown "the servant is entitled to recover the contract price, upon proving the employer's violation of the contract, and his own willingness to perform." The fact that the servant might have obtained new employment does not con-

stitute a defense. It is one of the facts to be considered in estimating the servant's loss.

Requiring a plaintiff to plead relating to these matters would be inconsistent with the traditional placing of the burden of proof. While we do not think that Tyson's complaint was deficient in this respect or that Tyson bore the burden of proof as to cover, this does not mean that a defaulting defendant cannot offer evidence on this score. The right to offer such evidence, or to have evidence offered by either party considered by the factfinder in considering damages, is clearly indicated by the quotation from *Van Winkle*. It has been held that regardless of the rules of pleading, such matter may be shown in evidence if it tends to show that the damages claimed were never suffered or that they could have been diminished. See *McClelland v. Climax Hosiery Mills*, 252 N.Y. 347, 169 N.E. 605 (1930, especially the concurring opinion by Cardozo, J., in which a majority of the court joined. It has been expressly held that evidence relating to "cover" is admissible under the general rules as to the status of a defaulting defendant in proceedings to fix damages. *Kelley, Maus & Co. v. LaCross Carriage Co.*, 120 Wis. 84, 97 N.W. 674 (1903). These holdings are consistent with our holding that it is competent for a defendant to show how a plaintiff might have mitigated or minimized its damages. *St. Louis, I. M. & S. Ry. Co. v. Ayres*, 67 Ark. 371, 55 S.W. 159.

As a further argument that Tyson was not entitled to the damages allowed, Kohlenberger relies upon clauses in the contract between the parties setting out an express warranty and a limitation of liability. They are:

> 1. WARRANTY. Kohlenberger warrants products herein described, so far as the same are of Kohlenberger's own manufacture, to be free from defects in materials and/or workmanship for a period of eighteen months from date of shipment. or for twelve months from date of startup, whichever is shorter. If within the period of such warranty, purchaser promptly notifies Kohlenberger of any claimed defect ... Kohlenberger will, at its option, repair or replace the same with like or similar part or parts or allow credit for the purchase price of the part, provided, however, that

the purchaser shall be responsible for all transportation and labor charges relating to the repair, installation or removal of the same.

THE FOREGOING WARRANTY IS EXCLUSIVE AND IS IN LIEU OF ANY OTHER EXPRESS OR IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS, AND OF ANY OTHER OBLIGATION ON THE PART OF KOHLENBERGER.

The allowance of credit or repair or replacement of defective part or parts of Kohlenberger shall constitute the sole remedy of purchaser and sole liability of Kohlenberger whether on warranty, contract or negligence.

Upon the expiration of such warranty period, or in the event such products are subjected to misuse, negligence, alteration, accident, improper repair, or operated contrary to Kohlenberger's printed instructions or brochures, all liability of Kohlenberger shall cease.

With respect to any part or parts supplied hereunder which are not manufactured by Kohlenberger, the warranty of the manufacturer thereof shall apply and be exclusive. . . .

* * *

4. LIMITATION OF LIABILITY. Kohlenberger's liability on any claim of any kind, including negligence, for any loss or damage arising out of or connected with, or resulting from this proposal or from the performance or breach thereof, or from the manufacture, sale, delivery, resale, repair, or use of any product covered by or furnished under this proposal shall in no case exceed the price allocable to the product, part or parts thereof which give rise to the claim. Purchaser agrees that Kohlenberger shall not be liable for any damages to purchaser or to a third party arising out of the presence of the products of Kohlenberger on purchaser's premises or out of the use or operation thereof. In no event shall

Kohlenberger be liable for any special, consequential or incidental damages.

Appellant urges that Tyson was limited to nominal damages by each clause. In considering this argument, we must recall that, in its complaint Tyson alleged breaches of both express and implied warranties. The contract between the parties was not set out in or exhibited to the complaint.

It has been held that evidence to show that *no* right of action existed is inadmissible. *Garrard* v. *Dollar*, 49 N.C. 175 (1856); *DeHoff* v. *Black*, 206 N.C. 687, 175 S.E. 179. But it has also been held that, in an action for its breach, the contract between the parties is admissible in evidence to mitigate damages by showing the extent of the defendant's covenant to the plaintiff, and the property not subject to the covenant. *Randolph* v. *Sharpe*, 42 Ala. 265 (1868). It has also been held that attendant circumstances giving character to the transaction may be shown insofar as they are relevant to the amount of recovery to which the plaintiff is entitled. *DeHoff* v. *Black*, supra.

By default Kohlenberger admitted allegations of the complaint that warranties were made, that they were breached and that Tyson suffered damages. *Hallett Construction Co.* v. *Iowa State Highway Commission*, 261 Iowa 290, 154 N.W.2d 71 (1967). Under Ark. Stat. Ann. § 85-2-316 (Add. 1961), remedies for breach of warranty can be limited in accordance with Ark. Stat. Ann. §§ 85-2-718 (Add. 1961) and 85-2-719 (Add. 1961) pertaining to liquidation or limitation of damages and to contractual modification of remedy. Under Ark. Stat. Ann. § 85-2-718, damages for breach by Kohlenberger could be liquidated in the agreement between the parties, but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of the proof of loss and the inconvenience or non-feasibility of otherwise obtaining an adequate remedy. Under § 85-2-719, it was permissible for the contract to provide for remedies in substitution for those provided in the UCC or to limit or alter the measure of damages recoverable by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts and to make the remedy agreed

upon the sole remedy, unless circumstances cause the exclusive or limited remedy to fail of its essential purpose. It was also permissible, under the same section, to limit or exclude consequential damages, unless the limitation or exclusion is unconscionable.

Not only do the two clauses in question show the extent of the warranty breached, but they are certainly attendant circumstances which give character to the transaction and are relevant to the amount of Tyson's recovery.[1] Thus, they were admissible in evidence, not in bar of any recovery, or as a defense to the action, but to be considered in determining whether Tyson was entitled to recover more than nominal damages, insofar as they constitute a valid limitation on the remedy or recovery.

By clause one, Kohlenberger sought to negate implied warranties of merchantability and of fitness, as well as to limit the remedy and recovery for any breach of its express warranty. Obviously, the negation of warranties would be a bar to an action for breach of those warranties and should have been pleaded as a defense which is not now available to Kohlenberger due to its default. It remains to be seen whether this clause and clause four are valid in respect to limitation of the remedy.

We have held an effort to limit recovery on breach of warranty to a refund of the purchase price of the goods to be unreasonable, unconscionable and against sound public policy when negligence on the part of the warrantor was clearly established. *Dessert Seed Co.* v. *Drew Farmers Supply, Inc.,* 248 Ark. 858, 454 S.W.2d 307. Although we there viewed the matter more from the standpoint of an attempted immunization of a contracting party's own negligence, an attempted limitation of recovery for breach of warranty was involved, and no sound reason appears why the same approach to that attempted limitation would not be appropriate. This attempted contractual modification or limitation of remedy is ineffective if it fails of its essential purpose, or is unconscionable; except as to consequential damages it would be ineffective only if unconscionable. Ark. Stat. Ann. § 85-2-719. In evaluating these clauses, it is appropriate that we resort to

---

[1]We recognize that the contract may furnish the guide to measurement of damages. *St. Louis, I. M. & S. Ry.* v. *Mudford,* 44 Ark. 439.

portions of the Committee Comments following the cited section. The Committee said:

> 1. Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect.
>
> However, it is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. Thus any clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed. Similarly, under subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article.
>
> * * *
>
> 3. Subsection (3) recognizes the validity of clauses limiting or excluding consequential damages but makes it clear that they may not operate in an unconscionable manner. Actually such terms are merely an allocation of unknown or undeterminable risks. The seller in all cases is free to disclaim warranties in the manner provided in Section 2-316.

The question of unconscionability must be determined in the light of general commercial background, commercial needs in the trade or the particular case, the relative bargaining position of the parties and other circumstances existing when the contract was made. This would seem to require that evidence be heard in this case. Ark. Stat. Ann. § 85-2-302, Committee Comment 1; *Dow Corning Corporation v. Capitol Aviation, Inc.*, 411 F.2d 622 (7th Cir. 1969); *Granite Worsted Mills v. Aaronson Cowen, Ltd.*, 29 App. Div. 2d 303, 287

N.Y.S.2d 765 (1968); see also, *K. & C., Inc.* v. *Westinghouse Electric Corp.*, 437 Pa. 303, 263 A.2d 390 (1970); *U. S. Fibres, Inc.* v. *Proctor & Schwartz, Inc.*, 358 F. Supp. 449 (D.C. Mich. 1972). The burden of showing that the clause in question is so one-sided as to oppress or unfairly surprise an innocent party lies upon the party attacking it. *Bill Stremmel Motors, Inc.* v. *IDS Leasing Corp.*, 89 Nev. —, 514 P.2d. 654 (1973). We cannot pass on this question on this appeal for we have no assurance that there will not be other evidence on the subject on retrial.

It would seem that the evidence introduced on this trial conclusively showed that the attempted modification and limitation failed of its essential purpose, as a matter of law. It has been held, properly we think, that when there is substantial evidence, as there is here, tending to show that a particular piece of machinery obviously cannot be repaired or its parts replaced so that the same is made free of defects, a jury verdict, which implicitly concludes that a limitation of the remedy to repair and replacement of non-conforming parts deprived the purchaser of the substantial value of the bargain, should be sustained. *Riley* v. *Ford Motor Co.*, 442 F.2d 670, 8 UCC Rep. Serv. 1175 (5th Cir. 1971). See also, *Jones & McKnight Corp.* v. *Birdsboro Corp.*, 320 F. Supp. 39, 8 UCC Rep. Serv. 307 (D.C. Ill. 1970). Such a remedy fails whenever the warrantor, given the opportunity to do so, fails to correct the defect within a reasonable period. *Moore* v. *Howard Pontiac-American Inc.*, 492 S.W.2d 227, 12 UCC Rep. Serv. 676 (Tenn. Ct. App. 1973); *Beal* v. *General Motors Corp.*, 354 F. Supp. 423, 12 UCC Rep. Serv. 105 (D.C. Del. 1973).

In this respect, an Illinois appellate court, in sustaining the allegation of a complaint against a motion to dismiss which had the same effect as a demurrer in Arkansas, very aptly said in *Adams* v. *J. I. Case Company*, 125 Ill. App. 2d 388, 261 N.E.2d 1 (1970):

> Plaintiff does not plead any coercive, fraudulent, overreaching or unconscionable sales tactics so presumably the original limitation of liability was not unreasonable. and from all that appears the plaintiff made his purchase with full knowledge of the limitations. But plaintiff could not have made his bargain and purchase with knowledge that defendants

would be unreasonable, or, in the words of his complaint, wilfully dilatory or careless and negligent in making good their warranty in the event of its breach. The manufacturer and the dealer have agreed in their warranty to repair or replace defective parts while also limiting their liability to that extent. Had they reasonably complied with their agreement contained in the warranty they would be in a position to claim the benefits of their stated limited liability and to restrict plaintiff to his stated remedy. The limitations of remedy and of liability are not separable from the obligations of the warranty. Repudiation of the obligations of the warranty destroy its benefits. The complaint alleges facts that would constitute a repudiation by the defendants of their obligations under the warranty, that repudiation consisting of their wilful failure or their careless and negligent compliance. It should be obvious that they cannot at once repudiate their obligation under their warranty and assert its provisions beneficial to them. Thus, the allegations of Count II of plaintiff's complaint invoke other provisions of the Uniform Commercial Code. Section 2-719(2) provides:

> "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act."

Failure of the exclusive remedy provided in the warranty is readily found in the allegation that defendants were wilfully dilatory or careless and negligent in complying with their obligations under the warranty.

But we have no assurance that the evidence will be the same either as to unconscionability or failure of purpose on a new trial.

Appellant argues that appellee was not entitled to recover for costs of labor in grinding ice purchased after the failure of the icemaker. The judgment was for $8,090.97 for sums expended by Tyson for labor to grind and auger ice purchased by it. There was no allegation pertaining to this item of damage in the complaint. The only allegation we can relate to this item of the judgment is that stating that Tyson expended $8,091.77 in labor costs in attempting to repair the equipment. Consequently, we find no basis for the award of this item of damages as a separate item.

Appellant also argues that Tyson was not entitled to recover $48,969.89 for ice purchased by it. Appellant states first that this is not the proper measure of damages because there was no deduction for expenses Tyson would have incurred if it had manufactured the ice itself. This question may well arise on a new trial, if the limitation on damages be found ineffective. Since damages to be awarded are intended to be compensatory, not punitive, if Tyson is entitled to recover special damages, it would be entitled to recover only the amount by which the cost of purchasing ice and preparing it for use exceeded its cost of manufacture by use of the machinery if it had performed properly. See Restatement of the Law, Contracts, § 329, p. 503, Illustration 4, p. 508.

Appellant also argues that the evidence was insufficient to support the full amount of $48,969 for ice purchased because of a failure of proof and because of the admission of incompetent evidence in support of this item. This evidence consisted of various invoices introduced through the president of the processing division of Tyson. Appellant points out that one invoice is for storage or purchase of frozen foods, rather than for purchase of ice. While we have been unable to connect such an item with the breach of warranty, the only objection made to the introduction of this and other invoices on which the judgment was rendered was that they constituted hearsay. Of course, if the invoices were records of Tyson made in the regular course of its business, and their relevance is shown, they are admissible as against the objection made. Ark. Stat. Ann. § 28-928 (Repl. 1962); *Rogers* v. *Frank Lyon Company*, 253 Ark. 856, 489 S.W.2d 506; *Royal Service Co.* v. *Whitehead Construction Co.*, 254 Ark. 234, 492 S.W.2d 423. There does not appear to have been any objection to the relevance of any of the invoices. Appellant, however, did object to the failure of appellee to show, as a foundation for the introduction, that the witness through whom the invoices, or ice delivery tickets, were introduced knew of his own knowledge that they were for ice purchased because of the failure of the ice maker or knew that Tyson had paid them. Request for voir dire examination of the witness on this evidence was refused by the trial judge, who stated that these matters might be inquired into on cross-examination. Appellant's attorney did cross-examine the witness on these matters, but did not thereafter renew his objection. Under these circumstances, we find no reversible error.

The judgment is reversed and the cause remanded for

further proceedings not inconsistent with this opinion.

BYRD, J., dissents.

CONLEY BYRD, Justice, dissenting. I must disagree with the majority opinion in so far as it holds that Kohlenberger, Inc., can prove its contractual limitation of damages and modification of remedy.

Our decisions consistently hold that in the absence of a plea of payment, proof thereof is inadmissible. See *Arkansas Power & Light Company v. Liebe, Admix.,* 201 Ark. 292, 144 S.W. 2d 29 (1940). It is pointed out in 61 Am. Jur. 2d PLEADING § 156 that affirmative defenses—that is matters constituting a confession and an avoidance such as payment and contractual limitations on the time within which suit may be brought, must be affirmatively pleaded before evidence can be introduced thereon. The Federal Rules of Civil Procedure [Rule 8(c)] are quoted as being to the same effect. We follow the general rule. See *Chiles v. Mann & Mann,* 240 Ark. 527, 400 S.W. 2d 667 (1966), where, upon a general denial, we upheld the trial court's ruling that appellant could not show that he signed the note in issue in his capacity as president of a corporation instead of his individual capacity. In so holding we said:

> "There are several reasons why the Court was correct in this ruling. The first relates to the rules of pleading: *i.e.,* under a general denial testimony of confession and avoidance cannot be heard such as here: the defendant confesses his act of signing the note but seeks to avoid the effect by claiming he signed. as an officer of a corporation. Some of our cases showing the limited evidence that may be offered under a general denial are: *Grier v. Tutterman,* 102 Ark. 433, 145 S.W. 194; and *Shirk v. Williamson,* 50 Ark. 562, 9 S.W. 562. Our cases are in accord with the general rules as regards pleadings. In 41 Am. Jur. 396, 'Pleadings' § 149, the text reads: 'Like the general issue, the general denial operates as a denial of every material allegation of the complaint as fully as if it had been specifically and separately denied. . . . It covers defenses which go to destroy the plaintiff's cause of action, *but not those which are grounded on new matter or matters in avoidance or other defense that must be specially*

*pleaded.*' (emphasis supplied.) And in § 155 of the same text the general holdings are summarized: 'Since the plaintiff must apprise the defendant in the beginning as to what he relies upon for a recovery, it is only right that the defendant should be required also to inform the plaintiff of any special or affirmative defense he expects to make by pleading the facts constituting such defenses. ' "
. . . ' "

Furthermore, in *St. Paul Ins. Co.* v. *Gray*, 240 Ark. 66, 398 S.W. 2d 506 (1966), where we had before us an alleged contractual limitation of liability, we there said:

"A jury trial resulted in a verdict in favor of appellee for $2,575.85, from which appellant prosecutes this appeal, assigning seven separate points for a reversal.

1. In appellant's answer it admitted owing appellee $190.88 for damage to the tractor, and now contends that is the only amount supported by the evidence. This contention by appellant is based on the assertion that appellee did not offer in evidence the policy provisions relied on to 'establish the amount of his loss.' There is no merit in this contention because appellant, in its answer, admitted issuing the insurance policy covering the tractor and admitted the tractor was damaged while the policy was in effect. Therefore, if there was any provision in the policy which limited the amount of coverage it was the duty of appellant to plead it affirmatively. *Stucker* v. *Hartford Accident and Indemnity Company*, 220 Ark. 475, 248 S.W. 2d 383 and *Bankers Insurance Company* v. *Hemby*, 217 Ark. 749, 233 S.W. 2d 637."

By the default to the complaint of Tyson's Foods, Inc., Kohlenberger, Inc., admitted that it breached an express warranty, an implied warranty of merchantability and an implied warranty of fitness. Yet, as I understand the majority opinion, it is permitting Kohlenberger, Inc., who defaulted, to prove in mitigation of damages not only that it contractually excluded any implied warranties of merchantability or fitness but also that it limited its liability for breach of the warranty including an exclusion of all consequential or incidental damages. To me these are either new matters or matters by way of confession and avoidance, and when we place a

defaulting defendant in a better position on proof of damages than we would one who had filed a general denial, we are placing an undue burden upon both the plaintiff and the trial court. Under the majority view the plaintiff, just to prove his damages, would have to anticipate every conceivable affirmative defense and have the witnesses available in court to make the necessary proof to overcome the defaulting defendant's evidence.

Since I consider payment, exclusion of implied warranties of merchantability or fitness and a contractual limitation of liability as matters that must be specifically pleaded, it follows that I find that the trial court was correct in allowing "(b) $48,969.89, as consequential damages resulting from defendant's breach of warranty as the result of ice purchased by plaintiff [Tyson's Foods, Inc.] to perform its operations during times said machinery was either partially or totally inoperative." Under those circumstances it would appear that Tyson's Foods, Inc., upon the entering of a remittitur for all amounts in excess of $48,969.89 would be entitled to an affirmance as modified.

For the reasons herein stated I respectfully dissent.